**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COLORADO**

Civil Action No. 1:15-cv-01212-NYW

JOHN J. ELLERTON, an individual,
C & J RESOURCES, INC., a Colorado corporation,
C & J RESOURCES PENSION PLAN & TRUST, a Colorado trust,

       Plaintiffs,

v.

SEFTON RESOURCES, INC., a British Virgin Islands corporation.

       Defendant.

---

**DEFENDANT SEFTON RESOURCES, INC.'S  COUNTERCLAIMS**
**AGAINST PLAINTIFFS JOHN J. ELLERTON, C & J RESOURCES, INC.,**
**AND C & J RESOURCES PENSION PLAN & TRUST**

---

Defendant/Counterclaim Plaintiff Sefton Resources, Inc. ("Sefton"), by and through its

attorneys, Danielle L. Kitson and Stephen E. Baumann II of Littler Mendelson, P.C.,

respectfully submits these Counterclaims[1] against Plaintiffs John J. Ellerton, C & J Resources,

Inc., and C & J Resources Pension Plan & Trust, and alleges as follows:

---

[1] Sefton understands that the July 8, 2015 filing of an Involuntary Petition in the United States Bankruptcy Court for the District of Colorado, Case No. 15-17608-MER, by Plaintiffs John J. Ellerton, C & J Resources, Inc., and C & J Resources Pension Plan & Trust effected an automatic stay of Plaintiffs' claims in this action, and all of Sefton's defenses and dispositive motions as to Plaintiffs' claims in this action. *See* 11 U.S.C. § 362(a).  As such, it is Sefton's understanding that Sefton cannot at this time file any motion to dismiss those claims or answer that would require the Court to evaluate Plaintiffs' claims against Sefton. *See Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372–73 (10th Cir. 1990).  Sefton also understands, however, that it must still assert its Counterclaims in this action or risk losing the ability to do so. *See, e.g., Mid Kan. Fed. Sav. & Loan Ass'n of Wichita By & Through Resolution Trust Corp. v. Orpheum Theater Co.*, 151 B.R. 560, 563 (D. Kan. 1993) ("A petition in bankruptcy does not stay claims, including counterclaims, brought by the debtor.").  Sefton reserves its right to assert all defenses and to bring all appropriate dispositive motions upon any resolution of the

## PARTIES

1.      Defendant/Counterclaim Plaintiff Sefton Resources, Inc., is a British Virgin Islands corporation with its principal place of business at 1 Northumberland Avenue, Trafalgar Square, London, WC2N 5BW, United Kingdom.

2.      Upon information and belief, Counterclaim Defendant John J. Ellerton is an individual and resident of the State of Hawaii.

3.      Upon information and belief, Counterclaim Defendant C & J Resources, Inc. ("C & J"), is a Colorado corporation with its principal place of business at 3279 McClure Drive, Erie, Colorado 80516.

4.      Upon information and belief, Counterclaim Defendant C & J Resources Pension Plan & Trust ("C & J Trust") is a trust established under the laws of the State of Colorado that at one time did business at 5290 DTC Parkway, Suite 150, Englewood, Colorado 80111.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331, 28 U.S.C. § 1332(a), 28 U.S.C. § 1367, and Federal Rule of Civil Procedure 13(a), as these Counterclaims arise out of the transactions or occurrences that are the subject matter of Plaintiffs' Complaint [ECF No. 4].

6.      The Court has personal jurisdiction over the Counterclaim Defendants because they voluntarily filed their Complaint in this Court, and because each Plaintiff is a resident of, did business or offered services in, and availed itself of the rights and privileges of the State of Colorado.

---

bankruptcy action, upon any order for relief in the bankruptcy action, or upon any order modifying or construing differently the automatic stay in either the bankruptcy action or this action.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these Counterclaims occurred in the District of Colorado.

## GENERAL ALLEGATIONS

8.      Mr. Ellerton is the founder of Sefton, which stock has traded on the London Stock Exchange since Sefton's initial public offering on December 8, 2000.  Mr. Ellerton was Sefton's CEO until he stepped down from the position on or about August 22, 2013.  He also was a Board member and the Chairman of the Board from time to time during that same period.

9.      On or about April 15, 2008, Mr. Ellerton was personally and individually sued by Gary Dillabaugh in Colorado state court to recover a personal debt.  *See* Ex. A, Am. Compl. in Case No. 08CV2877, Denver District Court (the "Lawsuit").

10.     Mr. Ellerton advised Sefton's Board of Directors about the existence of the Lawsuit, but represented that it involved solely a personal matter unrelated to the Company.

11.     In or about October 2010, C & J, Mr. Ellerton, and Sefton assumed certain obligations through a Consultancy Agreement (the "Agreement"), by virtue of which Mr. Ellerton continued in and assumed the roles of Chairman of the Board and CEO of Sefton.  *See* Ex. B, Consultancy Agreement.

12.     Under Schedule 1 of the Agreement, C & J and Mr. Ellerton agreed that he would "[p]erform CEO and/or Chairman duties and responsibilities for Sefton Resources."

13.     Under the Agreement and Schedule 2 of the Agreement, C & J and Mr. Ellerton agreed that he would "faithfully and diligently and to the best of [his] ability" provide such services, among other things, using "all reasonable skill, expertise and care, [and] us[ing] his best endeavours to promote the interests of [Sefton]."  *See* Ex. B, § 4.1

14.     Under Schedule 2 of the Agreement, C & J and Mr. Ellerton agreed that he would "immediately disclose to [Sefton] any conflict of interest [arising] in relation to [Mr. Ellerton's] provision of the Services as a result of any present or future engagement, employment or other concern."

15.     Under the Agreement and Schedule 2 thereto, C & J and Mr. Ellerton agreed not to directly or indirectly in any way interfere with the relationship between Sefton and its employees, either during the term of the Agreement, or for the twelve-month period thereafter. *See* Ex. B, §§ 1.1; 11.6.

16.     In or about August 2013, Sefton's Board learned that Mr. Ellerton had lied about the Lawsuit.  Specifically, Sefton's Nomad Advisor, Allenby Capital Limited ("Allenby"), brought to the Board's attention certain then-recent Internet blog posts implicating Mr. Ellerton's abuse of his position as CEO of the Company in connection with the Lawsuit. According to the blog posts, the Lawsuit had uncovered that Mr. Ellerton had improperly conveyed corporate benefits and assets to pay Mr. Dillabaugh, in order to satisfy Mr. Ellerton's personal debt.

17.     Upon further investigation, the Board learned of Mr. Ellerton's admissions under oath in the Lawsuit that—over the course of almost a decade—he had provided certain company benefits to Mr. Dillabaugh with the express understanding that they would be considered offsets or other consideration against Mr. Ellerton's debt, including Mr. Dillabaugh's:

      (a)     Ability to purchase preferred shares of Sefton stock;

      (b)     Participation in Sefton's IPO;

      (c)     Allotment of Sefton shares;

      (d)     Grant of stock options;

    (e)        Entry into a consulting agreement with Sefton; and

    (f)        Entry of a settlement agreement with Sefton.

18.      The Board further learned of Mr. Ellerton's later-retraction of those admissions, when he claimed (once again under oath) that he never provided company benefits to Mr. Dillabaugh in satisfaction of a personal debt.

19.      The Board also learned that, after conducting a bench trial on Mr. Dillabaugh's claims, the Court in the Lawsuit had found that Mr. Ellerton's testimony was not believable or credible in several instances. *See* Ex. C, May 14, 2009 Findings of Fact, Conclusions of Law and Judgment (the "Decision"). The Decision also found that Mr. Dillabaugh was asked by Mr. Ellerton to transfer 45,000 shares of Sefton stock to Mr. Ellerton's children.

20.      As a party to the Lawsuit, Mr. Ellerton was privy to the details of what was being claimed in the Lawsuit and the information that was being disclosed in discovery. He therefore knew that what he was representing to the Board regarding the solely personal nature of the Lawsuit was false. He never disclosed the true details of the Lawsuit with the Board until *after* the Board confronted him with the details upon learning them from Allenby.

21.      After bringing the Internet blog posts to Sefton's attention, Allenby informed Sefton of its conclusion that Mr. Ellerton was unfit to serve in the roles of Chairman and CEO. Allenby advised that, if Mr. Ellerton continued in those roles, then Allenby would resign as Sefton's Nomad.

22.      Sefton conveyed that information to Mr. Ellerton, who agreed to temporarily step down from the positions of Chairman and CEO effective August 22, 2013. After further investigation by Sefton, Mr. Ellerton agreed to resign permanently from the roles of Chairman and CEO effective August 30, 2013.

23.    On October 23, 2013, Sefton notified C & J and Mr. Ellerton that it was terminating the Agreement effective December 31, 2013, under section 3.1 of the Agreement.

24.    On multiple occasions since December 31, 2013 (and in some instances two or three times a day), Mr. Ellerton has contacted Sefton employees, and has requested that they provide him with confidential company information and documents. In some of the calls, Mr. Ellerton has implied that he would have authority over the employees in the future.

**The JAMS Arbitration and Mr. Ellerton's Improper Use of C & J**

25.    These actions were brought to light in a prior arbitration proceeding initiated by C & J against Sefton, JAMS Case No. 15274 (the "Arbitration").

26.    During the Arbitration, Sefton learned that Mr. Ellerton and his estranged wife, Carol Ellerton, started C & J on February 16, 2009, with the help of their family attorney, Larry Harvey.

27.    C & J stands for "Carol" and "John." Upon information and belief, the Ellertons formed C & J for the purpose of engaging "in a number of ventures" under the corporate name. These "ventures" have included purchasing their shared home (also the location of C & J's office) and possibly other residential properties.

28.    C & J's corporate "records" consist largely of a series of handwritten notes.

29.    According to C & J's June 30, 2014 account statements at Bank of the West, C & J carries an average monthly balance of $14,764.00, and a balance of $14,633.40 as of June 30, 2014.

30.    C&J has no commercial properties, and, upon information and belief, none of the residential properties possibly purchased as C & J ventures are actually in C & J's name.

31.    Other than the Agreement with Sefton, C & J had no other business contracts.

32.   C & J has no employees other than possibly Mrs. Ellerton, who may or may not pay taxes on her wages pursuant to an IRS Form W-2.

33.   Mr. and Mrs. Ellerton have used C & J's assets to make a variety of personal expenditures.  C & J's bank statements show frequent purchases at Macy's, Nordstrom, Safeway, Whole Foods, Zales, Topaz Gems, and several other retailers.

34.   Approximately every two weeks, Mr. Ellerton withdrew $500.00 in cash "for coffee and dinner and movies or whatever."

35.   In addition to these purchases, Mr. Ellerton used approximately $19,000 of C&J's assets to finance his daughter's wedding.

36.   Mr. and Mrs. Ellerton also used the C&J account to "treat [themselves]" to massages at the Grand Wailea Spa.

37.   Since its inception, C&J has never prepared financial statements reflecting its assets, debts, and capitalization.

38.   The Arbitration was ultimately dismissed without prejudice on or about November 19, 2014.

**Plaintiffs' Improper Bad Faith Filing of the Bankruptcy Action**

39.   Plaintiffs then commenced this action on May 14, 2015, which was timely removed on June 11, 2015.  *See* Notice of Removal [ECF No. 1].

40.   On July 8, 2015, Plaintiffs then subsequently filed an Involuntary Petition against Sefton in the United States Bankruptcy Court for the District of Colorado on July 8, 2015 (the "Bankruptcy Action").  *See* Ex. D.

41.     Each of the Plaintiffs in this action—and only the Plaintiffs in this action—are listed as the filing "creditors" for "Breach of Contract" "claims" that exactly echo the amounts sought in this action.  *See* Ex. E, Motion to Dismiss.

42.     Sefton has timely moved to dismiss the Bankruptcy Action as an improper bad-faith filing that cannot meet the requirements of a proper petition for involuntary bankruptcy. *See id.*

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – C & J)

43.     Sefton incorporates each and every allegation contained in all previous paragraphs.

44.     Sefton and C & J are parties to the Agreement and Schedules thereto, a valid and enforceable contract.

45.     Sefton performed all of its material obligations under the Agreement.

46.     C & J breached its obligations under the Agreement by failing to abide by its own duties of care and loyalty, and failing to ensure that Mr. Ellerton would abide by his own duties of care and loyalty, as described in the Agreement and as discussed above.  Both C & J (through the knowledge of its Principal, Mr. Ellerton) and Mr. Ellerton, himself, knew before entering into the Agreement, that Mr. Ellerton had engaged in prior breaches of his fiduciary duties to Sefton as detailed in the Lawsuit, and that such breaches might have an adverse impact on Sefton in the future.   Both C & J and Mr. Ellerton further knew that Mr. Ellerton had lied to Sefton's Board about the nature of the Lawsuit.   Yet C & J and Mr. Ellerton allowed Mr. Ellerton to assume the roles of Chairman and CEO of the Company, to Sefton's detriment, and continued over the course of almost three years to omit and hide from the Board the critical details of the Lawsuit concerning Mr. Ellerton's misdeeds.

47.     C & J further breached the Agreement by interfering with the relationship between Sefton and its employees, through the conduct of its Principal and agent, Mr. Ellerton, in making requests for confidential information to Sefton employees as described above.

48.     Sefton has been damaged by C & J's breaches of the Agreement, in a manner and amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Duty of Good Faith and Fair Dealing – C & J)**

49.     Sefton incorporates each and every allegation contained in contained in all previous paragraphs.

50.     Through the conduct described in Sefton's First Claim for Relief above, C & J breached the covenant of good faith and fair dealing that is implied in every contract, and implied in the Agreement.

51.     Sefton has been damaged by C & J's breach of the covenant of good faith and fair dealing, in a manner and amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Fraud in the Inducement – C & J)**

52.     Sefton incorporates each and every allegation contained in all previous paragraphs.

53.     In the process of entering into the Agreement, C & J intentionally omitted and failed to disclose to Sefton the fact that Mr. Ellerton had engaged in the misconduct described above, including the fact that Mr. Ellerton had lied to the Board, all material facts.

54.     Sefton reasonably relied on C & J's misrepresentations made in the course of forming the Agreement, including C & J's misrepresentations through omission that Mr. Ellerton had not engaged in any misconduct toward the company.

55.     If Sefton had known of Mr. Ellerton's misconduct, Sefton would not have entered into the Agreement.

56.     C & J's fraudulent inducement makes the Agreement voidable, permitting Sefton to rescind the Agreement.

57.     Sefton has been damaged by C & J's misrepresentations in a manner and amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Mr. Ellerton)

58.     Sefton incorporates each and every allegation contained in all previous paragraphs.

59.     Mr. Ellerton is a party to the Agreement by virtue of his execution of Schedule 2 to the Agreement, by which he personally agreed to assume obligations under the Agreement.  *See* Ex. B (executed Schedule 2).  Sefton's obligations under the Agreement were expressly conditioned on Mr. Ellerton's execution of Schedule 2 of the Agreement.  *See* Ex. B, § 2.2.

60.     Mr. Ellerton further is party to the Agreement by virtue of the fact that he was the alter ego of C & J.  He personally signed the Agreement on behalf of C & J, as C & J's "Director and Consultant," and he initialed each page of the Agreement.

61.     Upon information and belief, Mr. Ellerton incorporated C & J, and was, at all relevant times, its sole or chief owner, operator, officer, and shareholder, as well as the primary person running C & J.  Upon information and belief, Mr. Ellerton had sole or chief decision-making authority for C & J during all relevant times.  Upon information and belief, Mr. Ellerton used credit cards issued in his own personal name, and not C & J's, to incur business expenses in his role as Chairman and CEO for Sefton.

62.    Upon information and belief, C & J was or is a mere instrumentality or enterprise for the transaction of Mr. Ellerton's own affairs, and there was or is such a unity of interest in his ownership that the separate personalities of himself and C & J did or do not exist.

63.    Justice would be served by recognizing the substance of the relationship between Mr. Ellerton and C & J over the corporate form, because the corporate fiction was used to perpetrate a fraud as detailed above and below.   An equitable result would be achieved by recognizing the substance of the relationship over the corporate form.

64.    Sefton performed all of its material obligations under the Agreement, a valid and enforceable contract.

65.    Mr. Ellerton breached his obligations under the Agreement by failing to abide by his and C & J's duties of care and loyalty, as described in the Agreement and as discussed above.  Both C & J and Mr. Ellerton himself knew, before entering into the Agreement, that Mr. Ellerton had engaged in prior breaches of his fiduciary duties to Sefton as detailed in the Lawsuit, and that such breaches might have an adverse impact on the Company in the future. Both C & J and Mr. Ellerton further knew that Mr. Ellerton had lied to Sefton's Board about the nature of the Lawsuit.  Yet C & J and Mr. Ellerton allowed Mr. Ellerton to assume the roles of Chairman and CEO of the Company, to Sefton's detriment, and continued over the course of almost three years to omit and hide from the Board the critical details of the Lawsuit concerning Mr. Ellerton's misdeeds.

66.    Mr. Ellerton further breached the Agreement by interfering with the relationship between Sefton and its employees by making requests for confidential information to Sefton employees as described above.

67.     Sefton has been damaged by Mr. Ellerton's breaches of the Agreement, in a manner and amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing – Mr. Ellerton)

68.     Sefton incorporates each and every allegation contained in all previous paragraphs.

69.     Mr. Ellerton is a party to the Agreement by virtue of his execution of Schedule 2 to the Agreement, by which he personally agreed to assume obligations under the Agreement.  *See* Ex. B (executed Schedule 2).  Sefton's obligations under the Agreement were expressly conditioned on Mr. Ellerton's execution of Schedule 2 of the Agreement.  *See* Ex. B, § 2.2.

70.     Mr. Ellerton further is party to the Agreement by virtue of the fact that he was the alter ego of C & J.  He personally signed the Agreement on behalf of C & J, as C & J's "Director and Consultant," and he initialed each page of the Agreement.

71.     Upon information and belief, Mr. Ellerton incorporated C & J, and was, at all relevant times, its sole or chief owner, operator, officer, and shareholder, as well as the primary person running C & J.  Upon information and belief, Mr. Ellerton had, at all relevant times, sole or chief decision-making authority for C & J.  Upon information and belief, Mr. Ellerton used credit cards issued in his own personal name, and not C & J's, to incur business expenses in his role as Chairman and CEO for Sefton.

72.     Upon information and belief, C & J was or is a mere instrumentality for the transaction of Mr. Ellerton's own affairs, and there was or is such a unity of interest in his ownership that the separate personalities of himself and C & J did or do not exist.

73.   Justice would be served by recognizing the substance of the relationship between Mr. Ellerton and C & J over the corporate form, because the corporate fiction was used to perpetrate a fraud as detailed above and below.   An equitable result would be achieved by recognizing the substance of the relationship over the corporate form.

74.   Through the conduct described in Sefton's Fourth Claim for Relief above, Mr. Ellerton breached the covenant of good faith and fair dealing that is implied in every contract, and implied in the Agreement.

75.   Sefton has been damaged by Mr. Ellerton's breach of the covenant of good faith and fair dealing, in a manner and amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Fraud in the Inducement –
### Mr. Ellerton)

76.   Sefton incorporates each and every allegation contained in all previous paragraphs.

77.   Mr. Ellerton is a party to the Agreement by virtue of his execution of Schedule 2 to the Agreement, by which he personally agreed to assume obligations under the Agreement. *See* Ex. B (executed Schedule 2).   Sefton's obligations under the Agreement were expressly conditioned on Mr. Ellerton's execution of Schedule 2 of the Agreement. *See* Ex. B, § 2.2.

78.   Mr. Ellerton further is party to the Agreement by virtue of the fact that he was the alter ego of C & J.   He personally signed the Agreement on behalf of C & J, as C & J's "Director and Consultant," and he initialed each page of the Agreement.

79.   Upon information and belief, Mr. Ellerton incorporated C & J, and was, at all relevant times, its sole or chief owner, operator, officer, and shareholder, as well as the

primary person running C & J.  Upon information and belief, Mr. Ellerton had, at all relevant times, sole or chief decision-making authority for C & J.  Upon information and belief, Mr. Ellerton used credit cards issued in his own personal name, and not C & J's, to incur business expenses in his role as Chairman and CEO for Sefton.

80.    Upon information and belief, C & J was or is a mere instrumentality or enterprise for the transaction of Mr. Ellerton's own affairs, and there was or is such a unity of interest in his ownership that the separate personalities of himself and C & J did or do not exist.

81.    Justice would be served by recognizing the substance of the relationship between Mr. Ellerton and C & J over the corporate form, because the corporate fiction was used to perpetrate a fraud as detailed above and below.   An equitable result would be achieved by recognizing the substance of the relationship over the corporate form.

82.    In the process of entering into the Agreement, Mr. Ellerton intentionally omitted and failed to disclose to Sefton the fact that he had engaged in the misconduct described above, a material fact.  He further failed to disclose that he had lied to the Board regarding the nature of the Lawsuit, also a material fact.

83.    Sefton reasonably relied on Mr. Ellerton's representations made in the course of forming the Agreement, including Mr. Ellerton's misrepresentations through omission that he had not engaged in any misconduct toward the company.

84.    If Sefton had known of Mr. Ellerton's misconduct, Sefton would not have entered into the Agreement.

85.    Mr. Ellerton's fraudulent inducement makes the Agreement voidable, permitting Sefton to rescind the Agreement.

86.     Sefton has been damaged by Mr. Ellerton's misrepresentations in a manner and amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Abuse of Process – Mr. Ellerton, C & J, and C & J Trust)

87.     Sefton incorporates by reference each and every allegation in all previous paragraphs.

88.     Mr. Ellerton, C & J, and C & J Trust intentionally caused the Involuntary Petition to be filed in the Bankruptcy Court.

89.     The Bankruptcy Action was filed improperly and in bad faith.  Upon information and belief, the principal reason for the filing of the Involuntary Bankruptcy was to extract a settlement from Sefton in this action, which is an improper purpose for the use of the Bankruptcy Court and bankruptcy processes.

90.     The filing of the Involuntary Petition caused Sefton damages in the amount of any loss of business due to the filing, in the amount of its attorney fees and costs in responding to the Involuntary Petition, and in the manner and amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act
### Colo. Rev. Stat. § 6-1-105 to -115 -
### Mr. Ellerton)

91.     Sefton incorporates by reference each and every allegation in all previous paragraphs.

92.     Mr. Ellerton engaged in deceptive trade practices including the misdeeds alleged above and below, and, among other things:

a.   Knowingly conveying Sefton's corporate benefits and assets to Mr.

Dillabaugh to satisfy his personal debts;

b. Knowingly making false representations that the nature of the Lawsuit was personal;

c. Knowingly making false representations that he was acting on Sefton's behalf or with Sefton's authority in improperly conveying Sefton's resources to third parties, including Mr. Dillabaugh;

d. Knowingly passing off his services and status as acting on Sefton's behalf when asking Sefton employees to convey Sefton's confidential information while falsely implying that he would have power over them in the future;

e. Disparaging Sefton's goods, services, property, or business by filing the Involuntary Petition; and

f. Failing to disclose to Sefton that nature of the Lawsuit and his other misdeeds intending to induce Sefton to enter the Agreement;

g. Failing to disclose to Mr. Dillabaugh that he had no authority to provide the assets and benefits of Sefton to him intending that Mr. Dillabaugh enter into the transactions alleged above.

93.     These deceptive trade practices occurred in the course of Mr. Ellerton's business.

94.     These deceptive trade practices significantly impacted the public as actual or potential consumers, including, but not limited to, Mr. Dillabaugh and other customers and clients of Sefton.

95.     Sefton was an actual consumer of Mr. Ellerton's services through the Consultancy Agreement, and was injured in the court of its business as a result of the deceptive trade practices.

96.    These deceptive trade practices caused actual damages or losses to Sefton in a manner and amount to be proven at trial, including, without limitation, costs, attorney fees, and three times the amount of actual damages sustained under Colorado Revised Statutes section 6-1-113(2)(a)(III).

### NINTH CLAIM FOR RELIEF
#### (Vicarious Liability – C & J and C & J Trust)

97.    Sefton incorporates by reference each and every allegation in all previous paragraphs.

98.    Mr. Ellerton was a Principal, agent, or employee of C & J and C & J Trust during all relevant time periods.

99.    C & J and C & J Trust are artificial entities that can only act through their principals, agents, and employees.

100.   Mr. Ellerton was acting in the scope of his employment with C & J or C & J Trust while committing the acts described in all previous paragraphs.

101.   As such, C & J and C & J Trust are vicariously liable for all acts alleged by Mr. Ellerton in a manner and amount to be proven at trial.

### TENTH CLAIM FOR RELIEF
#### (Violation of the Racketeer Influenced and Corrupt Organizations Act
#### 18 U.S.C. §§ 1962, 1964(c) -
#### Mr. Ellerton, C & J, and C & J Trust)

102.   Sefton incorporates by reference each and every allegation in all previous paragraphs.

103.   Mr. Ellerton, C & J, and C & J Trust are each "persons" who received income from a pattern of racketeering activity under 18 U.S.C. § 1961(3) and 18 U.S.C. § 1961(5).

104. The association among Mr. Ellerton and these entities is an "enterprise" within the meaning of 18 U.S.C. § 1961(4):

  a. C & J and C & J Trust are both ongoing operations with decision-making frameworks including at least Mr. Ellerton;

  b. The two entities and Mr. Ellerton are associates that function as a continuing unit; and

  c. C & J and C & J Trust each exist separate and apart from the scheme to defraud Sefton and to steal Sefton's corporate assets.

105. The enterprise engaged in a number of predicate acts constituting "racketeering activity," under 18 U.S.C. § 1961(1), including, but not limited to:

  a. Using telephones, electronic transmissions, and/or mail on numerous separate occasions to fraudulently orchestrate the unauthorized transfers of Sefton funds, stock, and benefits to Mr. Dillabaugh to offset Mr. Ellerton's personal debts;

  b. Using telephones, electronic transmissions, and/or mail to ask Mr. Dillabaugh to fraudulently transfer 45,000 shares of Sefton stock to Mr. Ellerton's children;

  c. Using telephones, electronic transmissions, and/or mail to knowingly making false representations that the nature of the Lawsuit was personal;

  d. Using telephones, electronic transmissions, and/or mail in failing to disclose to Sefton that nature of the Lawsuit and Mr. Ellerton's other misdeeds intending to induce Sefton to enter the Agreement;

e.  Obstructing justice in lying under oath in the Lawsuit regarding Mr. Ellerton's misdeeds; and

f.  Knowingly engaging in monetary transactions in property, including funds, stock, and benefits stolen from Sefton.

106.  The enterprise engaged in a "pattern" of racketeering activity through continued misrepresentations to Sefton and theft from Sefton and others from approximately 1999 through the false statements under oath during the Arbitration in 2013.  If not stopped, upon information and belief, the enterprise will continue to misuse these entities to defraud and steal from others.

107.  The enterprise derived income directly or indirectly through this pattern of racketeering activity, in which each participated as a principal, including, but not limited to, the offset of Mr. Ellerton's personal debts through the fraudulent transactions with Mr. Dillabaugh.

108.  The enterprise invested or used all or part of that income in the enterprise, including, but not limited to, the uses described in paragraphs 31 through 36 above.

109.  The enterprise was engaged in, or the activities of the enterprise affected, interstate or foreign commerce.

110.  Sefton is a "person" within the meaning of 18 U.S.C. § 1961(3).

111.  Sefton's business or property was injured by the enterprise by reason of the violations of § 1962 above.

112.  Sefton seeks actual damages or losses to Sefton in a manner and amount to be proven at trial, including, without limitation, costs, attorney fees, and threefold the damages Sefton sustained under 18 U.S.C. § 1964(c).

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Colorado Organized Crime & Control Act
### Colo. Rev. Stat. § 18-17-101 to -108 –
### Mr. Ellerton, C & J, C & J Trust)

113. Sefton incorporates by reference each and every allegation in all previous paragraphs.

114. Mr. Ellerton, C & J, and C & J Trust are each "persons" who received income from a pattern of racketeering activity under Colorado Revised Statutes sections 18-17-103(3), (4).

115. The association among Mr. Ellerton and these entities is an "enterprise" within the meaning of Colorado Revised Statutes sections 18-17-103(2):

    a.    C & J and C & J Trust are both ongoing operations with decision-making frameworks including at least Mr. Ellerton;

    b.    The two entities and Mr. Ellerton are associates that function as a continuing unit; and

    c.    C & J and C & J Trust each exist separate and apart from the scheme to defraud Sefton and to steal Sefton's corporate assets.

116. The enterprise engaged in a number of predicate acts constituting "racketeering activity," under Colorado Revised Statutes sections 18-17-103(5), including, but not limited to:

    a.    All conduct alleged in paragraph 105 above under Colorado Revised Statutes sections 18-17-103(5)(a);

    b.    Theft from Sefton as alleged above through the improper siphoning of Sefton's assets, stock, and benefits to pay Mr. Ellerton's personal debts under Colorado Revised Statutes sections 18-17-103(5)(b)(II); and

   c.  Perjury by Mr. Ellerton in the Lawsuit under Colorado Revised Statutes sections 18-17-103(5)(b)(VII).

117. The enterprise engaged in a "pattern" of racketeering activity by their continued misrepresentations to Sefton and theft from Sefton and others from approximately 1999 through the false statements under oath during the Arbitration in 2013. If not stopped, upon information and belief, the enterprise will continue to misuse these entities to defraud and steal from others.

118. The enterprise derived income directly or indirectly through this pattern of racketeering activity, in which each participated as a principal, including, but not limited to, the offset of Mr. Ellerton's personal debts through the fraudulent transactions with Mr. Dillabaugh.

119. The enterprise invested or used all or part of that income in the enterprise, including, but not limited to, the uses described in paragraphs 31 through 36 above.

120. Sefton is a "person" within the meaning of Colorado Revised Statutes sections 18-17-103(4).

121. Sefton's business or property was injured by the enterprise by reason of the violations of Colorado Revised Statutes section 18-17-104 above.

122. Sefton seeks actual damages or losses to Sefton in a manner and amount to be proven at trial, including, without limitation, costs, attorney fees, and threefold the damages Sefton sustained under Colorado Revised Statutes sections 18-17-106(7).

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff Sefton Resources, Inc., respectfully prays for judgment in its favor and against Counterclaim Defendants John J. Ellerton, C & J Resources, Inc., and C & J Resources Pension Plan & Trust for all recoverable past, present, and future damages, including cost and attorney's fees and interest, as well as treble damages

under Colorado Revised Statutes sections 6-1-113(2)(a)(III) and 18-17-106(7), and 18 U.S.C.

§ 1964(c), and for such further relief as the Court deems just and proper.

**SEFTON RESOURCES, INC., HEREBY DEMANDS A
JURY ON ALL ISSUES SO TRIABLE**

Dated: August 7, 2015.                    *s/ Stephen E. Baumann II*_____
                                          Danielle L. Kitson
                                          Stephen E. Baumann II
                                          LITTLER MENDELSON, P.C.
                                          A Professional Corporation
                                          1900 Sixteenth Street
                                          Suite 800
                                          Denver, CO  80202
                                          Telephone:  303.629.6200
                                          Email:  dkitson@littler.com
                                          sbaumann@littler.com

                                          ATTORNEYS FOR DEFENDANT
                                          SEFTON RESOURCES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2015, a true and correct copy of the foregoing **DEFENDANT SEFTON RESOURCES, INC.'S COUNTERCLAIMS AGAINST PLAINTIFFS JOHN J. ELLERTON, C & J RESOURCES, INC., AND C & J RESOURCES PENSION PLAN & TRUST** were filed and served via CM/ECF which sent notification of the filing to the following.   The duly signed original is on file at the office of Littler Mendelson, P.C.

> Kenneth J. Buechler
> Buechler Law Office LLC
> 1621 18th Street, Suite 260
> Denver, CO 80202
> ken@kjblawoffice.com

> *s/ Stephen E. Baumann II*
> Stephen E. Baumann II