**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01212-RM-NYW

JOHN J. ELLERTON,
C&J RESOURCES, INC.
C&J RESOURCES PENSION PLAN & TRUST,

       Plaintiffs,

v.

SEFTON RESOURCES, INC.,
MARK R. SMITH,
THOMAS G. MILNE, and
KEITH A. MORRIS,

       Defendants.

---

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

       This civil action is before the court on the following motions:

1. Defendant Sefton Resources, Inc.'s ("Sefton") Motion for Sanctions ("First Motion for Sanctions") [#75, filed May 12, 2016];

2. Plaintiff John J. Ellerton's Motion to Dismiss Without Prejudice [#84, filed June 3, 2016];

3. Sefton's Motion for Monetary Sanctions Under Federal Rule of Civil Procedure 37(d) ("Second Motion for Sanctions") [#89, filed June 10, 2016]; and

4. Sefton's Motion for Summary Judgment [#93, filed July 25, 2016].

These motions were referred to the undersigned pursuant to the Order Referring Case dated August 17, 2015 and memoranda dated May 12, 2016 [#76], June 3, 2016 [#86], June 17, 2016 [#90], and July 26, 2016 [#94].  For the following reasons, I respectfully RECOMMEND that the Motion to Dismiss be DENIED, Motion for Summary Judgment be GRANTED, and the First Motion for Sanctions be DENIED as moot, and ORDER that the Second Motion for Sanctions is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This court finds that the factual and procedural history of this action is particularly relevant to the various pending motions and the requested relief, and thus provides an extensive discussion of the background of this lawsuit as follows.

### I.   Factual Background

The following facts derive from the Verified Complaint, which is signed by Mr. Ellerton "under oath," but does not include an attestation verifying the factual contentions under penalty of perjury.  *See* [#4].  Mr. Ellerton is a founding member of Sefton, which was formed in January 1995.  [*Id.* at ¶ 12].  Sefton became a public company traded on the London Exchange in December 2000.  [*Id.* at ¶ 17].  After Sefton went public, Mr. Ellerton maintained his position as its largest individual shareholder.  [*Id.* at ¶ 20].  In October 2010, Sefton and Plaintiff C&J Resources, Inc. ("C&J") entered into a Consultancy Agreement, whereby Mr. Ellerton contracted his services as an independent contractor to Sefton and its subsidiaries.  [*Id.* at ¶ 35].  Mr. Ellerton alleges that pursuant to the Consultancy Agreement, C&J agreed to provide his services as Sefton's Chief Executive Officer and/or Chairman of the Board of Directors, provide his skill and expertise in running Sefton, promote the interests of Sefton, and insure Sefton's compliance

with all applicable laws and regulations.  [*Id.* at ¶ 36].  C&J and Plaintiff C&J Resources Pension Plan & Trust (the "Trust") (collectively, "Corporate Plaintiffs") are shareholders of Sefton.  [*Id.* at ¶ 39].

Following an Annual General Meeting in June 2013, Sefton's Board of Directors was comprised of Mr. Ellerton and Mark R. Smith, Thomas G. Milne, and Keith A. Morris (collectively, "Individual Defendants").  [#4 at ¶ 28].  In August 2013, Mr. Ellerton agreed to temporarily step down as Sefton's Chairman and Chief Executive Officer "to allow Sefton's Board of Directors sufficient time to investigate certain allegations made against [him] on the internet in a personal lawsuit brought by a third party against [him] some years before."  [*Id.* at ¶ 40].  Mr. Ellerton alleges that his agreement to temporarily step down was premised on two conditions: "that the Board act in such manner as to preserve the terms of the Consultancy Agreement with C&J," and that "the Board conduct a full and thorough investigation into the allegations as outlined in the August 22, 2013 press announcement by Sefton."  [*Id.*]  On August 20, 2013, "without Mr. Ellerton's or C&J's approval or consent," Sefton's Board announced that Mr. Ellerton's departure was permanent.  [*Id.* at ¶ 42].  Mr. Ellerton alleges that Sefton unilaterally terminated and thereby breached the Consultancy Agreement on or about October 23, 2013.  [*Id.* at ¶¶ 44, 49].  C&J thereafter initiated an arbitration proceeding ("Arbitration Proceeding") to assert a breach of contract claim.  [*Id.* at ¶ 51].  Plaintiffs claim damages arising from the alleged breach as follows: Sefton owes C&J "in excess of $316,700," for breaching the Consultancy Agreement; Sefton owes C&J "over $40,000 for legal expenses and costs incurred by C&J" in "actions against Mr. Ellerton while performing his duties for Sefton"; and "Sefton

owes the Trust approximately $19,546, for the unpaid pension plan contributions required under the Consultancy Agreement." [*Id.* at ¶¶ 52, 53, 54].

In addition, on or about August 29, 2013, while Mr. Ellerton served as an officer and director of Sefton, he provided a personal loan worth $10,000 to Sefton (the "Ellerton Loan"). [#4 at ¶ 56]. Mr. Ellerton expected that Sefton would repay the Ellerton Loan "upon demand with interest thereon at the current market rate." [*Id.* at ¶ 58]. Mr. Ellerton also incurred business expenses on behalf of Sefton (the "Ellerton Expenses"), for which he used his personal credit cards. [*Id.* at ¶ 59]. Plaintiff alleges that he incurred the Ellerton Expenses with the expectation that Ellerton would repay such funds upon demand, and claims that the total principal amount of the Ellerton Expenses approximates $35,700 as of the filing of the Verified Complaint. [*Id.* at ¶¶ 59, 61].

## II.      Insolvency and Derivative Allegations

Of particular relevance to this Recommendation and Order, Mr. Ellerton alleges that the Board "engaged in several short term financing transactions and borrowings" in 2014 that increased the balance of Sefton's subordinated debt. [#4 at 10-11]. For instance, Hawker Energy, LLC, now known as Hawker Energy, Inc. ("Hawker"), advanced approximately $1,500,000 to Sefton in the first half of 2014. [*Id.* at ¶¶ 78, 79]. In July of 2014, the Board called an Extraordinary General Meeting (the "Meeting") to approve a restructuring of Sefton's activities and the financing from Hawker ("Hawker Transaction No. 1"). The restructuring proposed that Hawker acquire 80 percent of an oil field owned by Sefton's principal asset, TEG USA. TEG USA would own the remaining 20 percent. Hawker would pay TEG $3,000,000 in an unsecured promissory note to acquire a controlling interest in the oil field. [*Id.* at ¶ 80]. Mr.

Ellerton alleges that prior to the Meeting, the Board issued new shares to the Individual Defendants, who then back dated the issuance to July 18, 2014 so as to vote the shares at the Meeting. [*Id.* ¶ 82]. Mr. Ellerton alleges that the Board "was in possession of price sensitive information, including Sefton's production and revenues, status of [debt], the engineering evaluation of Sefton's assets and reserves, and other pertinent financial data, as well as knowledge of the [Meeting] voting," and did not share this information with Sefton's shareholders, and did not share relevant information about Hawker's financial status. [*Id.* at ¶ 83]. According to Mr. Ellerton, the issuance of additional stock to the Individual Defendants diluted the shares held by him and the Corporate Plaintiffs and caused the price of Sefton's stock to decline. [*Id.* at ¶ 84]. The Board voted to approve the sale of 80 percent of the oil field to Hawker. Hawker was "effectively insolvent" at the time of the Meeting, and the insolvency was not disclosed to Sefton shareholders. [*Id.* at ¶¶ 86-88]. Following the Meeting, Hawker provided Sefton and TEG USA "with approximately $600,000 as a loan." [*Id.* at ¶ 92].

In January 2015, Sefton and Hawker entered into a revised agreement ("Hawker Transaction No. 2"), by which Hawker would acquire 100 percent of TEG USA "in exchange for an assumption of certain liabilities…, the issuances of 3,000,000 shares of stock in Hawker, and 5,000,000 warrants for Hawker stock," and would loan funds to TEG USA to acquire an additional forbearance of bank debt. [#4 at ¶¶ 93, 96]. Mr. Ellerton alleges that Hawker was insolvent at the time of Hawker Transaction No. 2, and the Board again failed to provide sufficient information to Sefton's shareholders to facilitate an informed decision. [*Id.* at ¶¶ 96, 97]. Furthermore, Sefton's "true financial condition" was not disclosed to the company's shareholders. [*Id.* at ¶ 98]. Ultimately, Mr. Ellerton asserts, the "net result of Hawker

Transaction No. 2, left Sefton still liable on [bank debt], and holding worthless stock of an insolvent company." [*Id.* at ¶ 100]. Mr. Ellerton alleges that, "[b]ased upon the filings to the [Securities Exchange Commission] by Hawker and Sefton's own press releases, Sefton lacks sufficient assets to pay all of its liabilities, including the liabilities owed to the Plaintiffs," and that Sefton is insolvent. [#4 at ¶¶ 110, 111].

Mr. Ellerton alleges that he is a shareholder of Sefton and was a shareholder at all times relevant to the Verified Complaint, and that he has commenced this action "to enforce the rights that Sefton may properly assert but has failed to enforce." [#4 at ¶ 120]. Mr. Ellerton further alleges that he made "numerous written demands upon Sefton and its Board of Directors, including [the Individual Defendants], to correct the actions taken, including, but not limited to, restoring Mr. Ellerton to his status as Chairman and CEO of Sefton." [*Id.* at ¶ 124]. Mr. Ellerton participated in the July 2014 Meeting "but was denied the ability to ask questions or seek any additional information concerning the transactions approved by the Board." [*Id.*] Plaintiffs made demand upon Sefton for, and have been refused, the corporation's books, records, and financial information. [*Id.* at ¶ 125]. They assert that any additional demand that may be required would be fruitless because the Board is not disinterested and independent. [*Id.* at ¶ 126].

## III.    Initial Procedural History

On May 14, 2015, Mr. Ellerton and the Corporate Plaintiffs initiated this action, through counsel, in the District Court for the City and County of Denver, Colorado. Sefton, as the only Defendant Plaintiffs had served, removed the matter to the United States District Court for the District of Colorado on June 10, 2015 on the basis of diversity. *See* [#1]. The Verified

Complaint asserts as follows: First Claim for Breach of Fiduciary Duty brought by Plaintiffs on behalf of Sefton as to the Board; Second Claim for Civil Conspiracy brought by Plaintiffs on behalf of Sefton as to the Board; Third Claim for Breach of Duty of Good Faith and Fair Dealing brought by Plaintiffs on behalf of Sefton as to the Board; Fourth Claim for Breach of Fiduciary Duty brought by Plaintiffs against Sefton and the Board; Fifth Claim for Breach of Contract brought by Plaintiff Ellerton against Defendant Sefton; Sixth Claim for Breach of Contract brought by Corporate Plaintiffs against Sefton; and Seventh Claim for Unjust Enrichment & Quantum Meruit brought by Plaintiffs against Sefton.  [#4].

On August 7, 2015, Sefton filed a "Notice of Filing of Counterclaims and Partially Unopposed Request to Confirm Automatic Stay and to Confirm Filing of Counterclaims," notifying the court that Plaintiffs had filed an Involuntary Petition in the United States Bankruptcy court for the District of Colorado listing each Plaintiff as "creditor" and asserting allegations of a breach of contract identical to the allegations of breach asserted in this matter. [#15].  The same day, Sefton filed a responsive pleading containing eleven counterclaims, noting its belief that the automatic stay prevented it from filing an answer or motion to dismiss at that time.  *See* [#16 at n.1].  Plaintiffs thereafter filed a Suggestion of Bankruptcy confirming that they had commenced an involuntary proceeding under Chapter 7 of Title 11 of the United States Bankruptcy Code. [#17].  Plaintiffs filed a response to Sefton's counterclaims on August 28, 2015. [#32].

On October 16, 2015, counsel for Plaintiffs filed a Motion to Withdraw.  [#35].  On December 14, 2015, Mr. Ellerton and Sefton filed a Joint Status Report, in which the Parties advised that the stay in the bankruptcy action had been lifted, Plaintiff Ellerton represented his

7

intention to pursue this litigation, and Sefton represented its intention to defend against Plaintiffs' claims and pursue its counterclaims.[1]  [#41].  This court thereafter held a Telephonic Status Conference at which the undersigned granted the Motion to Withdraw and ordered that counsel for the Corporate Plaintiffs enter an appearance on or before February 1, 2016.  This court advised Mr. Ellerton that to the extent he intended to proceed *pro se* as an individual, he was required to comply with the Federal Rules of Civil Procedure, the Local Rules of the District of Colorado, and the Practice Standards of the Honorable Raymond P. Moore.  [#42].  The court specifically advised that the Corporate Plaintiffs could not proceed without counsel, and warned that failure to retain representation would result in the court issuing an order to show cause as to why any claims asserted by the Corporate Plaintiffs should not be dismissed.  [#42].  This court further ordered the Individual Defendants, once and if served, to file a response to the Verified Complaint on or before February 10, 2016.   Finally, the undersigned set a Scheduling Conference to be held February 24, 2016.  [*Id.*]

On February 10, 2016, Sefton filed its "Answer, Defenses, and Amended Counterclaims" against Plaintiffs.  [#44].   The Counterclaims plead as follows: (1) Breach of Contract as to C&J; (2) Breach of the Duty of Good Faith and Fair Dealing as to C&J; (3) Fraud in the Inducement as to C&J; (4) Breach of Contract as to Mr. Ellerton; (5) Breach of the Duty of Good Faith and Fair Dealing as to Mr. Ellerton; (6) Fraud in the Inducement as to Mr. Ellerton; (7) Abuse of Process as to all Plaintiffs; (8) Malicious Prosecution as to all Plaintiffs; (9) Violation of the Colorado Consumer Protection Act as to Mr. Ellerton; (10) Vicarious Liability as to C&J

---

[1] The Parties attached to their Joint Status Report the order of the Honorable Michael E. Romero dismissing Plaintiffs' Involuntary Bankruptcy Petition with prejudice, noting Plaintiffs' failure to appear at an evidentiary hearing set for November 12, 2015. [#41-1].

and the Trust; (11) Violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1962, 1964(c) as to all Plaintiffs; and (12) Violation of the Colorado Organized Crime & Control Act, Colo. Rev. Stat. §§ 18-17-101 to 108 as to all Plaintiffs. [#44]. Plaintiffs had not served the Individual Defendants by that time and thus those Defendants did not join in the "Answer, Defenses, and Amended Counterclaims." [*Id.*]. On February 23, 2016, Mr. Ellerton filed a Response to Sefton's Counterclaims. [#48]. However, the Response is dated February 5, 2016—five days before Sefton filed its Amended Counterclaims. *See* [*id.*] On March 9, 2016, Sefton filed a supplemented computation of its damages. *See* [#55].

## IV.    The Corporate Plaintiffs and Individual Defendants

On February 3, 2016, this court issued an Order to Show Cause as to the Corporate Plaintiffs to explain their lack of prosecution and failure to comply with a court Order, and as to all Plaintiffs as to why the Individual Defendants should not be dismissed for failure to timely effect process as to those Defendants. [#43]. On February 22, 2016, Mr. Ellerton, proceeding *pro se*, filed a Response to the Order to Show Cause, representing that his former counsel, Mr. Buechler, had previously withdrawn from this action on the basis of past-due invoices and that he could re-engage Mr. Buechler if he paid the invoices as well as a retainer for on-going services. [#46]. Mr. Ellerton further represented that his access to the assets needed to re-engage Mr. Buechler were the subject of a dispute currently being adjudicated in his divorce proceeding in Hawaii state court. [*Id.*] Plaintiff then requested that the court "provide a continuance on this action until more discovery is obtained in [the divorce proceeding] and the results of on-going discussions with Sefton, regarding a possible agreement/settlement to this action, are determined." [#46 at 4]. This court denied Plaintiff's request for an extension of the

response deadline in a Minute Order dated February 23, 2016.  [#51].  Mr. Ellerton's Response

to the Order to Show Cause did not address the failure to serve the Individual Defendants.  The

Corporate Plaintiffs failed altogether to file a Response to the Order to Show Cause.

This court held a Scheduling Conference on February 24, 2016.  The undersigned ordered

in relevant part that the Parties complete discovery by June 24, 2016 and file dispositive motions

by July 25, 2016.  [#52].  At the Scheduling Conference, Mr. Ellerton admitted that the

Corporate Plaintiffs were not currently represented by counsel, and the Individual Defendants

had not been served.  On February 25, 2016, this court issued a Recommendation that the

Corporate Plaintiffs and Individual Defendants be dismissed and the First, Second, Third, and

Sixth Claims be dismissed.  With respect to the Verified Complaint, the Recommendation

identified the Fourth, Fifth, and Seventh Claims as pending, to be limited to Mr. Ellerton as an

individual and Sefton as the sole remaining Defendant.  [#53].  On October 24, 2016, the court

adopted the Recommendation.  [#108].

**V.      Current Posture of Case and Pending Motions**

The sole remaining Parties to this action are Mr. Ellerton, as Plaintiff and Counterclaim

Defendant, and Sefton, as Defendant and Counterclaim Plaintiff.  On April 26, 2016, this court

held a Telephonic Status Conference to discuss matters of timing involving discovery.  The same

day, Sefton filed a Motion for Entry of Default as to all Plaintiffs, asserting that the Corporate

Plaintiffs never responded to the Amended Counterclaims, and that Mr. Ellerton's Response

(dated February 5 but filed February 23) failed to respond to either the Eighth Amended

Counterclaim for Malicious Prosecution arising from the bankruptcy action or numerous factual

allegations and allegations related to punitive damages.  *See* [#68 at 3].  The Motion for Entry of

Default asked the Clerk of the Court to enter default as follows: (1) Sefton's First, Second, and Third Claims for Relief asserted against C&J; (2) Sefton's Tenth Claim for Relief asserted against C&J and the Trust; (3) Sefton's Eighth Claim for Relief and its requests for exemplary or punitive damages under Colorado Revised Statute § 13-21-102(1)(a) against all Plaintiffs/Counterclaim Defendants; and (4) Sefton's Seventh, Eleventh, and Twelfth Claims for Relief as asserted against C&J and the Trust. [*Id.*] On May 6, 2016, Mr. Ellerton filed a "Declaration Regarding Sefton Resources, Inc.'s Motion for Entry of Default," reiterating his position that Sefton owes him money. *See* [#72]. Sefton then filed a Reply in support of the Motion for Entry of Default. [#79].

On May 12, 2016, Sefton filed the pending First Motion for Sanctions seeking dismissal of Mr. Ellerton's claims with prejudice citing his "numerous failures to comply with the rules and orders of this Court, including his failure to provide Initial Disclosures or otherwise advance this case." [#75 at 1]. Mr. Ellerton opposed the Motion, and filed a Motion to Dismiss his claims without prejudice the same day. *See* [#77]. Mr. Ellerton did not include a certificate of conferral in his motion.

In a Minute Order dated May 17, 2016, this court considered the Motion for Entry of Default, First Motion for Sanctions, and Motion to Dismiss and noted, among other things, that neither Party addressed how the court should resolve the Amended Counterclaims. This court directed the Clerk of the Court to enter default as to C&J and the Trust only and struck the Motion to Dismiss with leave to refile. *See* [#80]; *see also* [#81].

On June 3, 2016, Mr. Ellerton filed the pending Motion to Dismiss, to which he attached electronic correspondence from counsel for Sefton indicating Defendant's intention to pursue its

Amended Counterclaims against all the Plaintiffs/Counterclaim Defendants.   [#84; #84-5]. Sefton opposed the Motion and filed a Response the same day, articulating its position that the Amended Counterclaims remain pending against all Plaintiffs regardless of the disposition of the Motion to Dismiss and the only appropriate disposition of Mr. Ellerton's claims is with prejudice, and asking that the court award it fees and costs incurred in defending the lawsuit.[2] *See* [#85].

On June 10, 2016, notwithstanding Mr. Ellerton's failure to file a Response to the First Motion for Sanctions, Sefton filed a Reply, reiterating its position that the court should dismiss all claims against it with prejudice.   Sefton also asked that the court enter default as to all Plaintiffs on all of its Amended Counterclaims due to Plaintiffs' failure to participate in the discovery process (as opposed to their failure to respond to the Amended Counterclaims).   *See* [#88].

Also on June 10, 2016, Sefton filed the pending Second Motion for Sanctions seeking monetary sanctions for Plaintiffs' failure to appear for their depositions and failure to respond to interrogatories and other discovery requests.   [#89].   On June 21, 2016, Mr. Ellerton filed a "Declaration Response Regarding Sefton Resources, Inc.'s Motion for Monetary Sanctions" again asserting his position that Sefton owes him money.   *See* [#91].   Mr. Ellerton did not address the contention that he had failed to appear for his deposition or respond to discovery requests, other than to assert that the court should deny the Second Motion for Sanctions as "Sefton has for the most part ignored discovery rules."   [*Id.* at 3].   On July 7, 2016, Sefton filed a

---

[2]   Sefton also clarified that it would seek entry of default judgment as to the Corporate Plaintiffs only once a judgment is entered against Mr. Ellerton.   *See* [#85 at 2, n.1].

Reply specifying that it seeks monetary sanctions as an alternative to dismissal and default, and reimbursement of its expenses in addition to the sanctions.  [#92 at 1 n.1].

On July 25, 2016, Sefton filed the pending Motion for Summary Judgment seeking summary judgment on all claims asserted against it by Mr. Ellerton.[3]  [#93].  This court instructed Mr. Ellerton to file a response on or before August 18, 2016.  *See* [#95].  On August 9, 2016, Mr. Ellerton filed a "Response to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Sanctions Against Defendant," along with a "Declaration By Plaintiff with Respect to Plaintiff's Motion for Dismissal Without Prejudice, Defendant's Counterclaims and Defendant's Motion for Monetary Sanctions."  [#96; #97].  On August 10, 2016, Judge Moore ordered the Response stricken for failure to comply with his Practice Standards and Local Rule 7.1(d) of this District.  [#98].  Mr. Ellerton did not re-file a response.

## LEGAL STANDARDS

### I.   *Pro Se* Litigants

Mr. Ellerton has been proceeding *pro se* in this action since the court granted his attorney's motion to withdraw on November 6, 2015.  *See* [#38].  "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including…summary judgment proceedings."  *Id.* at n.3 (citations omitted).  However, the court cannot be a *pro se* litigant's advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th

---

[3] The Motion for Summary Judgment is directed at all claims asserted against Sefton by all Plaintiffs; however, following the court's October 24, 2016 Order, Mr. Ellerton remains as the sole Plaintiff and only the Fourth, Fifth, and Seventh Claims as asserted in the Verified Complaint remain pending against Sefton.

Cir. 2008).  In addition, a *pro se* litigant is held to the same procedural rules and substantive law as a represented party.  *See Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994)*; Dodson v. Bd. of Cty. Comm'rs,* 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## II.      Federal Rule of Civil Procedure 37

Sefton moves for sanctions under Rule 37(b),(c), and (d).  Rule 37(b) pertains to a party's failure to obey a court order.  Pursuant to Rule 37(b)(2)(A), the district court where the action is pending may order the following sanctions against a party who fails to obey an order to provide or permit discovery: (i)  designating facts as established for purposes of the action; (ii) prohibiting the non-complying party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order at issue is obeyed; (v) dismissing the action; (vi) rendering a default judgment against the non-complying party; or (vii) treating as contempt of court the failure to obey the order.  Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

Rule 37(c) pertains to a party's failure to disclose, supplement an earlier discovery response, or admit.  Specifically, a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) may not use that information or witness as evidence in support of a motion or at a hearing or during trial, unless the failure is "substantially justified or is harmless." On motion and "after giving an opportunity to be heard," the court may also, or instead, order the non-complying party to pay his opponent's reasonable expenses caused by the failure to disclose, may inform the jury of the party's failure to disclose, or may impose any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi).  Fed. R. Civ. P. 37(c)(1).

Finally, Rule 37(d) governs sanctions the court may impose following a party's failure to attend his own deposition or serve answers to interrogatories.  In either instance, and on motion, the court where the action is pending may order any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi) where party with proper notice fails to appear for his deposition, or where a party who is properly served with interrogatories under Rule 33 fails to serve his answers, objections, or written response.  Fed. R. Civ. P. 37(d)(1)(A).  A motion filed pursuant to this Rule must include a certification that the movant engaged in a robust meet and confer with the party who has failed to act, in an effort to resolve the dispute without court intervention.  *Id.* at 37(d)(1)(B).  In addition to or instead of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), the court may order the party failing to act to pay the movant's reasonable expenses caused by the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.* at 37(d)(3).

## III.    Federal Rule of Civil Procedure 41

Mr. Ellerton moves to dismiss his lawsuit without prejudice.  Pursuant to Rule 41 of the Federal Rules of Civil Procedure, a plaintiff may dismiss an action without a court order only if the opposing party has not yet filed an answer or a motion for summary judgment, or if all parties who have appeared in the action stipulate to the dismissal.  Fed. R. Civ. P. 41(a)(1)(A). Where the opposing party has filed an answer or motion for summary judgment and does not stipulate to dismiss, the plaintiff must move for dismissal by court order.  *Id.* at 41(a)(1)(B). And, if a defendant has pleaded a counterclaim before receiving service of plaintiff's motion to dismiss, the court may dismiss the action over defendant's objection only if the counterclaim can

remain pending for independent adjudication. *Id.* at 41(a)(2). Unless the court orders otherwise, an order of dismissal under Rule 41(a)(2) is without prejudice.

## IV.    Federal Rule of Civil Procedure 56

Sefton moves for summary judgment on Mr. Ellerton's three remaining claims. Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002).  However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted).  "Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 F. App'x 64, 69 (10th Cir. 2004)).

When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). *See also Anderson*, 477 U.S. at 256 (The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.").  Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004).

Because Mr. Ellerton failed to file a response to the Motion for Summary Judgment, the court may deem the properly supported facts offered by Sefton as true, insofar as they are not contradicted by admissible evidence. *See* Fed. R. Civ. P. 56(e)(2); *Lammle v. Ball Aerospace & Techs. Corp.*, Case No. 11-cv-3248-MSK-MJW, 2013 WL 4718928, *1 (D. Colo. Sept. 1, 2013). As noted above, Mr. Ellerton initiated this action with a Verified Complaint.  A Verified

17

Complaint may be treated as an affidavit for the purposes of summary judgment in some instances and if it satisfies the standards for affidavits as set forth in Rule 56(c)(4) of the Federal Rules of Civil Procedure. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1018 (10th Cir. 2002). Under that Rule, an affidavit used to oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). In considering a motion for summary judgment, the court will disregard allegations of a verified complaint that are conclusory, vague, or lacking in foundation. *Lantec*, 306 F.3d at 1019. With respect to the pending Motion for Summary Judgment, this court has reviewed the exhibits offered by Sefton so as to ascertain their content and context. Despite Mr. Ellerton's lack of response, the court may not enter summary judgment unless Sefton carries its burden under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(e) (instructing summary judgment is appropriate only when the moving party has met its initial burden of production under Rule 56(c)). *See also Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (holding that a party's failure to respond to a summary judgment motion is not a legally sufficient basis on which to grant the motion and enter judgment against that party).

## ANALYSIS

Once again, the remaining claims asserted by Mr. Ellerton against Sefton are as follows:

- The Fourth Claim for Breach of Fiduciary Duty;

- The Fifth Claim for Breach of Contract; and

- The Seventh Claim for Unjust Enrichment/Quantum Meruit.

Sefton's twelve Amended Counterclaims remain pending against Mr. Ellerton, C&J, and the Trust.  Sefton does not move for summary judgment on these claims, but asks for default sanctions arising from purported discovery abuses.  A default judgment as a result of discovery abuses is an "extreme sanction" that is only appropriate if there has been willful misconduct, *see Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 167 F.R.D. 90, 106 (D. Colo. 1996).  This court thus reviews the Motion to Dismiss and Motion for Summary Judgment first, before turning to Sefton's Motions for Sanctions.  As a court sitting in diversity, I apply the substantive law of Colorado.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941).[4]

## I.    Plaintiff's Motion to Dismiss

Mr. Ellerton moves the court to dismiss his claims without prejudice due to his inability to afford an attorney and his involvement in a time-consuming divorce action.  *See* [#84].  Mr. Ellerton filed the Motion to Dismiss on June 3, 2016, which was approximately four months after Sefton filed its Answer and Amended Counterclaims.  *See* [#44].  Sefton opposes the court dismissing Mr. Ellerton's claims without prejudice on the basis that Mr. Ellerton has filed actions against it in three different forums, each arising from Mr. Ellerton's work as Sefton's contract "Chief Executive Officer and/or Chairman" under a "Consultancy Agreement," and each action has caused Sefton to litigate "for a year or more" and expend "hundreds of thousands of dollars in fees and costs."  [#85 at 3].  Sefton asserts that Mr. Ellerton is abusing the judicial system and the dismissal of these claims without prejudice will permit him to repeatedly litigate the issues

---

[4]  Additionally, the Consultancy Agreement includes a choice-of-law provision that specifies Colorado law should govern, [#93-5 at ¶ 24], and the Parties' relationship during the relevant time period was centered in Colorado.  *See* [#93 at 8 n.2].

against Sefton at Sefton's cost.  Mr. Ellerton did not file a reply in support of the Motion to Dismiss.

"Rule 41(a)(2) is designed to prevent voluntary dismissals that adversely affect the opposing party." *DeAtley v. Keybank National Association*, No. 12–cv–02973–PAB–BNB, 2014 WL 4436808, at *4 (D. Colo. Sept. 9, 2014) (citing *Brown v. Baeke,* 413 F.3d 1121, 1123 (10th Cir. 2005)).  A court should generally grant a plaintiff's request for dismissal without prejudice where legal prejudice to the defendant is not evident.  *Id.*  In reaching a determination regarding legal prejudice, the court should consider such factors as "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation."  *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir. 1997).  These factors are not exhaustive, and the court should examine the equities facing plaintiff as well as those facing defendant.  *Id.*  The factors need not all be resolved in favor of the moving party for dismissal to be appropriate, nor must all factors be resolved in favor of the opposing party for the court to deny the motion.  *Id.* (citing *Phillips U.S.A., Inc. v. Allflex U.S.A., Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)).  Whether to grant plaintiff's request for dismissal without prejudice lies within the court's discretion.  *Id.*

In considering these factors, I note first that Mr. Ellerton brought the Arbitration Proceeding to assert the same claims regarding the breach of the Consultancy Agreement.  He voluntarily dismissed the Arbitration Proceeding on November 19, 2014, eleven months after he initiated it and after Sefton had asserted counterclaims.  *See* [#85 at 3; #85-1].  Mr. Ellerton then filed this action, through Mr. Buechler, on May 14, 2015, asserting claims raised in the

Arbitration Proceeding plus additional claims.  On July 7, 2015, Mr. Ellerton filed an Involuntary Petition for Bankruptcy against Sefton in the United States Bankruptcy Court for the District of Colorado, also through Mr. Buechler, naming himself and the Corporate Plaintiffs as creditors. [#85 at 3; #85-2].  On October 15, 2015, Mr. Buechler moved to withdraw as counsel in the bankruptcy action.  *See* [#41-1 at 1].  The following month, Mr. Ellerton attempted to dismiss the bankruptcy action.  *See* [#85-3].  He then failed to appear (and no counsel for the Corporate Plaintiffs appeared) at an evidentiary hearing scheduled by the court.  *See* [#41-1 at 2].  Sefton asked for fees and costs and actual and punitive damages, all of which the bankruptcy court awarded after finding that Mr. Ellerton and the Corporate Plaintiffs had filed the involuntary petition in bad faith.  *See* [*id.* at 6].  The court then dismissed the action with prejudice.  *See* [*id.* at 7].

With respect to this litigation, there is no question that Sefton has incurred expense in defending itself (although the extent of the expense may be in some part due to Sefton's litigation strategy), while Mr. Ellerton has failed to show diligence in the prosecution of this action.  Indeed, Mr. Ellerton's Motion to Dismiss comes only after a significant lapse of time and expenditure of efforts by Sefton.  First, following Mr. Buechler's withdrawal in this matter, Mr. Ellerton repeatedly failed to inform himself of the Federal Rules of Civil Procedure, Local Rules of this District, and the Practice Standards of Judge Moore, *see* [#59; #80; #98], despite this court's clear admonition that it expected Mr. Ellerton to adhere to each set of Rules.  *See* [#42]. Second, in December 2015, after the bankruptcy court dismissed the involuntary petition with prejudice, Mr. Ellerton unequivocally affirmed his intention to pursue this lawsuit.  *See* [#41 at 1 ("I personally plan to advance this litigation…conduct full discovery to substantiate the facts set

forth in the 6 claims…[and] defend[] the unsupported counterclaims filed by Sefton against myself…")].   Thus ensued two Status Conferences [#42; #67], Sefton filing an Answer and Amended Counterclaims [#44], a Scheduling Conference [#52], two motions for entry of default [#63; #68], and the pending First Motion for Sanctions [#75], before Mr. Ellerton moved to dismiss this lawsuit without prejudice, almost one year to the day from when Sefton removed the action to this court.  *See* [#84].   Although this court has continued the Final Pretrial Conference twice, and thus the case is not yet postured for trial, *see* [#101; #106], Sefton has moved for summary judgment and there is no doubt that Sefton has conducted itself over the past year, including seeking written and deposition discovery, so as to prepare for an eventual trial.  *See DeAtley*, 2014 WL 4436808 at *4 ("defendant appears to have expended sufficient effort in this case to proceed to trial, a factor which weighs in defendant's favor") (citation omitted).   All the while, Mr. Ellerton, the docket reflects, has not been preparing for trial despite his position as the prosecuting party.   Furthermore, as far as this court can discern, Mr. Ellerton's circumstances did not change materially from the time he affirmed his intention to pursue the litigation in December 2015 until the date he filed the Motion to Dismiss, six months later.   The only change in circumstances is embodied in the First Motion for Sanctions, filed May 12, 2016, in which Sefton seeks dismissal sanctions for discovery violations.   *See* [#75].   In considering these circumstances, this court finds that the first two factors weigh in favor of denying the Motion to Dismiss.

As for Mr. Ellerton's explanation for seeking dismissal without prejudice, he cites the loss of Mr. Buechler and his inability to afford a new attorney "in order to comply with the timetable and schedule set by the Court," and he cites his divorce action, in which he also

proceeds *pro se*.  [#84].  This court considers these reasons as insufficient to warrant dismissal without prejudice at this juncture in the proceedings.  This court granted Mr. Buechler's motion to withdraw in November 2015, *see* [#38], and soon thereafter ordered the Parties to prepare a proposed scheduling order.  *See* [#42].  This court then held a Scheduling Conference, on February 24, 2016, at which it set the pre-trial deadlines and dates for this matter.  *See* [#52].  Mr. Ellerton was at all times aware of and appeared to endorse the pre-trial schedule.  *See* [#45; #52].  There is no indication in the record that Mr. Ellerton, a sophisticated individual who describes himself in the Verified Complaint as the founder and former President of Sefton, [#4 at ¶¶ 12, 21], was unable to understand the applicable Rules and/or the court's orders.  Indeed, Mr. Ellerton, by motion filed April 25, 2016, once asked for an extension of time "to comply with deadlines for March 2016 and April 2016," i.e., joinder of parties and amendment of pleadings and designation of principal experts.  *See* [#65].  This court denied that motion during a Status Conference held on April 26, 2016, and ordered Mr. Ellerton to serve Initial Disclosures no later than May 3, 2016 and for all Parties to provide documents responsive to outstanding discovery requests on or before May 9, 2016.  *See* [#67].  Thereafter, Mr. Ellerton never sought an extension of any pre-trial deadline.  I find that Plaintiff has not exercised diligence in adhering to the pre-trial timeline as set forth in the Scheduling Order; and, by waiting to communicate his inability to meet the deadlines until one month after Sefton filed for discovery sanctions, has needlessly delayed the progress of this case.  With respect to Mr. Ellerton's divorce, he was embroiled in that state court action, which he acknowledged was demanding of his time and financial resources, at the time he re-committed to pursuing this litigation.  *See* [#41 at 1-2].  He thus knew of the impact the divorce proceeding might have on this lawsuit well before he filed

the Motion to Dismiss. *Cf. Ohlander*, 114 F.3d at 1538 ("the most persuasive reason to file a motion to dismiss did not arise until eleven months following the initial proceeding's initiation").

Finally, as to the present stage of litigation, the court has not entered a final pretrial order or set a trial date, but Sefton has filed the pending Motion for Summary Judgment and expended significant resources in an attempt to resolve this matter. I find that this factor also weighs in favor of denying the Motion to Dismiss. *See Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993) (observing that in exercising its discretion under Rule 41(a)(2), the court should consider "whether the opposing party will suffer prejudice in the light of the valid interests of the parties").

This court concludes that the Rule 41(a)(2) dismissal without prejudice that Mr. Ellerton seeks would result in legal prejudice to Sefton that is not offset by the equities facing Plaintiff, and, therefore, respectfully RECOMMENDS that the Motion to Dismiss without prejudice be DENIED.[5] *See Ohlander*, 114 F.3d at 1537. I turn next to the Motion for Summary Judgment, in which Sefton seeks dismissal of Mr. Ellerton's claims with prejudice.

---

[5] While the court could recommend granting the Motion to Dismiss with prejudice or impose other conditions under Rule 41(a)(2), it would first need to give Plaintiff notice of its intention to dismiss with prejudice and the conditions it would impose, and allow Mr. Ellerton an opportunity to withdraw the request for voluntary dismissal. *See Michigan Surgery Inv., LLC v. Arman*, 627 F. 3d 572, 576 (6th Cir. 2010); *Webco Indus., Inc. v. Diamond*, No. 11-cv-774-JHP-FHM, 2012 WL 5995740, at *4 (N.D. Okla. Nov. 30, 2012). *But see U.S. ex rel Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002) (citing the *Arman* prerequisites with approval, but distinguishing its case from *Arman* on the basis that the government did not specify whether it sought to dismiss the claim at issue with or without prejudice). In accordance with Rule 1 of the Federal Rules of Civil Procedure, this court finds that consideration of and a recommendation regarding Sefton's pending Motion for Summary Judgment is more appropriate.

## II.   Defendant's Motion for Summary Judgment

Sefton moves for summary judgment on all claims asserted by Plaintiffs in their Verified Complaint.   In light of the court's October 24, 2016 Order, this court examines the Motion for Summary Judgment only as to the three remaining claims for: (1) Breach of Fiduciary Duty, (2) Breach of Contract, and (3) Unjust Enrichment/Quantum Meruit, and as between Mr. Ellerton and Sefton.   As noted above, Mr. Ellerton did not file a response to the Motion for Summary Judgment.   Nevertheless, where appropriate, this court considers the statements made in Plaintiff's Verified Complaint [#4], which was signed under oath.

### A.   Undisputed Material Facts[6]

The following facts are taken from Sefton's "Statement of Undisputed Material Acts [sic] in Support of Its Motion for Summary Judgment," ("SUF") in accordance with Fed. R. Civ. P. 56(e).   Sefton and C&J are parties to the Consultancy Agreement, effective October 1, 2010. [SUF ¶ 5; #93-5; #45 at 7, ¶ 7].   As part of the Consultancy Agreement, C&J agreed to provide Mr. Ellerton's services as "contract Chief Executive Officer ('CEO') and/or Chairman of the Client."   [SUF ¶ 6; #93-5 at ¶ 2.1].   The Consultancy Agreement provides as follows:

> The Client, in accordance with its expense reimbursement policy from time to time, will reimburse the Consultancy Company for payment of all necessary documented business expenses, including travel and entertainment expenses, which the Consultancy Company incurs in the performance of the Services within

---

[6] Sefton contends that the court should deem all Requests for Admissions propounded by it to Mr. Ellerton as admitted as a result of Plaintiffs' failure to timely respond to Sefton's Requests for Admission.   *See* [#93 at 7].   Rule 36(a)(3) expressly provides that "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."   Fed. R. Civ. P. 36(a)(3).   The Rule is not self-executing, but in reviewing the four Requests for Admissions propounded on Mr. Ellerton, *see* [#93-6 at 8], I find that they are appropriately deemed admitted.   Nevertheless, this court notes that some of the admissions are not material to the disposition of the Motion for Summary Judgment.

ten (10) days of submission of such documentation. The documentation of business expenses shall include the amount, time, place and type of expense, the reason, and nature of the expense, the name, occupation, address and any other pertinent information concerning each person who is entertained, in each case, sufficient to establish the business relationship to the Client, and all available receipts supporting the foregoing. [SUF ¶ 8; #93-5 at ¶ 6].

…

In the event this Agreement is terminated pursuant to Clause 9.1.1, 9.1.2, 3.1 (other than for death of the Consultant), 3.1, 3.2, or 3.3, or any combination of the foregoing named Clauses, the Client shall, subject to Clause 3.2, pay to the Consultancy Company, not later than ten (10) days after the Termination Date, (a) the Fee through the Termination Date, and (b) reimbursement for any unreimbursed expenses of the Consultancy Company under Clause 6. For the purpose of this Agreement, the termination pursuant to this provision shall be deemed for Cause. [SUF ¶ 9; #93-5 at ¶ 9.3].

…

The Consultancy Company represents and warrants that it is an independent contractor and that the Consultant is its employee or consultant. Nothing in this Agreement shall render the Consultancy Company or the Consultant an employee, worker, agent or partner of the Client or of any Group Company and the Consultancy Company shall not, and shall procure that the Consultant shall not, hold itself out as such. [SUF ¶ 10; #93-5 at ¶ 7.1].

…  The Consultancy Company shall not assign, transfer or subcontract any of its rights or obligations under this Agreement. [SUF ¶ 11; #93-5 at ¶ 11.8].

…

This Agreement sets out the entire agreement and understanding between the parties in respect of the subject matter of this Agreement and supersedes and extinguishes any and all other agreements, either oral or in writing, between the parties with respect to the Consultancy Company's provision of services to the Client which shall cease to have any further force or effect. This agreement can only be amended by the parties in writing, executed by each of the parties. [SUF ¶ 12; #93-5 at ¶ 9].

Sefton's counsel took Mr. Ellerton's deposition on September 22, 2015 as part of the

bankruptcy action. *See* [#93-7].  During the deposition, Mr. Ellerton testified that repayment of

the Ellerton Loan was to be made under the "third-party expenses" provision of the Consultancy Agreement. [SUF ¶ 14; #93-7 at 133:5-14, 135:21-136:20, 138:24-139:3].[7]  The only documents related to the Ellerton Loan are Mr. Ellerton's personal check and Sefton's publicly issued financial statements, neither of which indicates a due date or repayment terms. [SUF ¶ 15; #93-7 at 133:5-14].  The Consultancy Agreement is the contract to which Mr. Ellerton referred in his testimony regarding a contract with Sefton that governs the Ellerton Expenses and use of his credit cards.  [SUF ¶ 16; #93-7 at 126:8-126:17].  Pursuant to the Consultancy Agreement, Sefton paid business expenses incurred by Mr. Ellerton to C&J, who then reimbursed Mr. Ellerton.  [SUF ¶ 17; #93-7 at 128:12-24, 129:9-11].  Mr. Ellerton temporarily stepped down from his roles with Sefton effective August 22, 2013, following internet allegations against him related to his conduct with a third party.  [SUF ¶ 18; #93-8].

### B.    Application

#### 1.    *Breach of Fiduciary Duty as Between Mr. Ellerton and Sefton*

Mr. Ellerton claims that Sefton, as an insolvent company, held and controlled all of its assets for the benefit of its creditors and shareholders and owes a fiduciary duty to him in his role as a shareholder.  [#4 at ¶¶ 150-153].  Plaintiff alleges that Sefton breached its fiduciary duty by "engaging in the Hawker Transactions at a time when both Sefton and Hawker were insolvent [and] wrongfully issuing the directors sufficient shares of stock to insure the approval of the Hawker Transactions."  [*Id.* at ¶ 154].  Sefton argues that Colorado law does not recognize a fiduciary duty owed by an employer to an independent contractor or by a corporation to a

---

[7] "A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action."  Fed. R. Civ. P. 32(a)(8).

creditor, and Mr. Ellerton as a shareholder lacks standing to assert this claim directly against Sefton. [#93 at 9-10].

Before there can be a breach of a fiduciary duty, a fiduciary relationship must exist. *Vikell Investors Pacific, Inc. v. Kip Hampden, Ltd.*, 946 P.2d 589, 596 (Colo. App. 1997). Whether a legal duty is owed a party and the scope of such duty are questions of law for a court to decide. *Glover v. Southard*, 894 P.2d 21 (Colo. App. 1994). A confidential or fiduciary relationship may arise "when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction." *Nicholson v. Ash*, 800 P.2d 1352, 1355 (Colo. Ct. App. 1990). Varying circumstances can give rise to this type of relationship, and, where it is shown to exist, "the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary." *Id.* (citations omitted).

Directors of a corporation and its controlling stockholders owe a fiduciary duty to the remaining stockholders. *Bithell v. Western Care Corp.*, 762 P.2d 708, 714 (Colo. App. 1998); *United States v. Gates*, 376 F.2d 65 (10th Cir. 1967). However, "courts routinely hold that a corporation owes no fiduciary duty to its shareholders or members." *Town of Smyrna, Tennessee v. Municipal Gas Authority of Georgia*, 129 F. Supp. 3d 589, 602-03 (M.D. Tenn. 2015) (citing *Bateman v. JAB Wireless*, No. 2:14–cv–147–RJS, 2015 WL 4077923, at *4 (D. Utah Jul. 6, 2015) ("[Plaintiffs] have directed the court to no Utah or Colorado authority recognizing a fiduciary relationship between a corporation and its shareholders."). *See e.g., Radol v. Thomas,* 772 F.2d 244, 258 (6th Cir. 1985) ("Liability for breach of the directors' fiduciary obligation could not possibly run against the corporation itself, for this would create the

absurdity of satisfying the shareholders' claims against the directors from the corporation, which is owned by the shareholders. There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders."). Without a fiduciary duty, there can be no breach.[8]

Typically, dissatisfied shareholders assert claims for breach of fiduciary duty on behalf of the corporation against a director or third party. *See Combs*, 382 F.3d at 1200 (applying Colorado law to hold that "a stockholder cannot maintain a personal action against a director or other third party whose action causes harm to the corporation. Generally, it is the corporation, or a stockholder in a derivative action…, who must pursue such a claim.") (quoting *Nicholson*, 800 P.2d at 1356). Indeed, Colorado law expressly requires that claims of waste and corporate asset mismanagement, as well as claims regarding a corporation's failure to properly and timely inform its shareholders regarding offers to purchase, be brought as a derivative action. *Id.* (citing *River Mgmt. Corp. v. Lodge Props. Inc.*, 829 P.2d 398, 404 (Colo. Ct. App. 1991); *Colt v. Mt. Princeton Trout Club, Inc.*, 78 P.3d 1115, 1119 (Colo. App. 2003)). This is because generally such claims "allege injury to the corporation and, thus, can only be raised by the corporation itself or by the stockholders in a derivative suit." *River Mgmt. Corp.*, 829 P.2d at 403 (citation omitted). Plaintiffs originally asserted this claim as to all Defendants and included "Derivative

---

[8] In addition, Sefton owes no duty to Mr. Ellerton in his role as employee or independent contractor. *Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1200, n.2 (10th Cir. 2004) (noting that while an employee generally owes fiduciary duties to his or her employer, the employer generally does not owe a reciprocal duty) (collecting cases); *Bithell*, 762 P.2d at 714 (noting same with respect to independent contractors). To the extent Mr. Ellerton holds himself out as a creditor of Sefton, Colo. Rev. Stat. § 7-108-401(5) specifies that "[a] director or officer of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status as a creditor"; however, as addressed herein, the Individual Defendants are no longer parties to this action.

Allegations" in the Complaint, *see* [#4 at ¶¶ 120-130, 149-156]; and Sefton filed the Motion for Summary Judgment, which includes arguments against Plaintiffs' ability to bring a direct action versus a derivative action, before the court had dismissed the Corporate Plaintiffs or Individual Defendants.  In its current and operative form, however, the Complaint does not provide for a derivative action because Sefton is the only remaining defendant.

An exception to the general rule that shareholders address malfeasance through a derivative action applies if the shareholder can demonstrate that he was "injured *directly* or *independently* of the corporation." *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1258, 1259 (D. Colo. 2015) ("Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, which could result if plaintiff were to prevail.") (quoting *Kramer v. W. Pac. Indus.*, 546 A.2d 348, 351 (Del. 1988) (emphasis in original). *See also Nicholson*, 800 P.2d at 1357.  In other words, the shareholder may bring a direct action against the corporation, its officers, directors, and other shareholders to enforce a right that is personal to him; in this scenario the individual shareholder recovers damages. *See Murray v. Sevier*, 145 F.R.D. 563, 573 (D. Kan. 1993).  "A shareholder does not acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares." *Pernick*, 136 F. Supp. 3d at 1259 (citation omitted).

The Fourth Claim for Relief arises from the Hawker Transactions and the sale of Sefton assets. *See* [#4 at ¶¶ 64-106].  The claim does not appear to be personal to Mr. Ellerton, nor does he provide any basis for finding that he suffered an injury sufficiently unique so as to permit an

individual lawsuit.   Indeed, the Verified Complaint suggests that the Hawker transactions affected Mr. Ellerton and his fellow shareholders equally.   *See Barnes v. Harris*, 783 F.3d 1185, 1194 (10th Cir. 2015) (observing that "debt is not an intrinsic harm") (citation omitted).   For instance, Plaintiff alleges that "The Board of Directors, including Mr. Smith, Mr. Milne and Mr. Morris, did not share this information with Sefton's shareholders *as a whole*, nor did they share relevant information about Hawker's financial status."   [#4 at ¶ 82 (emphasis added)].   The claim also references all of Sefton's creditors and shareholders with respect to the duties and obligations owed by Sefton and the Individual Defendants and the damages suffered.   [*Id.* at ¶¶ 150-156].[9]   Furthermore, even if Mr. Ellerton had produced evidence sufficient to permit an individual lawsuit, it is clear from the Verified Complaint that the alleged wrongdoing is attributed to the Individual Defendants, not Sefton.   In short, I find that Mr. Ellerton cannot maintain an individual lawsuit against Sefton.

In light of Mr. Ellerton's failure to show a fiduciary duty owed to him by Sefton, this court respectfully recommends that the Motion for Summary Judgment be granted as to this claim.

2.   *Breach of Contract as Between Mr. Ellerton and Sefton*

Mr. Ellerton alleges that he "entered into agreements with Sefton to loan the Ellerton Loan and for the reimbursement of the Ellerton Expense," that these agreements constitute contracts, and that the loan and sums were payable upon demand.   [#4 at ¶ 158].   Mr. Ellerton

---

[9] This court notes that Colorado courts expressly do not allow plaintiffs to bring traditionally derivative claims in their individual capacity "based upon a hybrid status" of shareholder/creditor or shareholder/independent contractor."   *Combs*, 382 F.3d at 1201-02 ("when a shareholder does not possess the right to bring a suit in his individual capacity as a shareholder against the corporation, as is the case here, he does not gain that right merely because he also serves the corporation in another capacity") (citations omitted).

further alleges that he has made a demand for the amount owing and Sefton refuses to pay.  [*Id.* at ¶ 159].  Sefton argues that Mr. Ellerton cannot demonstrate he entered into a written contract with Sefton, and the Colorado statute of frauds would preclude enforcement of an oral contract. [#93 at 12-13].

Under Colorado law, a breach of contract claim requires the plaintiff to prove "(i) the existence of a binding agreement; (ii) the plaintiff's performance of its obligations (or some justification for its non-performance); (iii) the defendant's failure to perform its obligations; and (iv) resulting damages." *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  "Contract formation in Colorado requires evidence 'that the parties agreed upon all essential terms,'" and that a meeting of the minds occurred.  *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (quoting *I.M.A., Inc. v Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986); *Agritrack, Inc. v. DeJohn Housemoving, Inc*., 25 P.3d 1187, 1192 (Colo. 2001)).  The evidence may consist of the parties' "conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement."  *Id.* (quoting *I.M.A.*, 713 P.2d at 888).  The court should not create or enforce a contract between parties "when the contract itself does not clearly demonstrate the parties' intent."  *Id.* (citing *Newton Oil Co. v. Bockhold*, 176 P.2d 904, 908 (Colo. 1946)).  Pursuant to Colorado's statute of frauds, with exceptions not relevant here, an agreement the terms of which prevent performance within one year of its execution is void if not reduced to writing and signed by the party whose performance is owed.  Colo. Rev. Stat. § 38-10-112(1)(a).

According to the Verified Complaint, the scope of Mr. Ellerton's breach of contract claim is limited to the Ellerton Loan and Ellerton Expenses. *See* [#4 at ¶¶ 158-161]. While the question of whether a contract exists is generally a matter of fact to be determined by the jury, such is the case only where "the evidence is conflicting or admits of more than one inference." *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) (quoting *I.M.A., Inc.*, 713 P.2d at 887). In considering the facts before it, this court concludes that there is no genuine issue of material fact that precludes summary judgment with respect to the breach of contract claim.

In his deposition relating to the bankruptcy proceeding, Mr. Ellerton referenced an audit report to support his claim that Sefton owes him repayment for the Ellerton expenses. [#93-7 at 125:7-126:7]. However, when asked expressly if he has a written contract "in which Sefton agreed to reimburse any credit cards," Mr. Ellerton identified the Consultancy Agreement and represented that he customarily used credit on Sefton's behalf and submitted, himself or through C&J, expense accounts to Sefton for reimbursement. [*Id.* at 126:8-17, 127:7-25, 127:25-128:4]. The Consultancy Agreement is not between Mr. Ellerton and Sefton, but rather is between C&J, no longer a plaintiff in this action, and Sefton. [#93-5]. The disbursement provision provides that the Client, i.e., Sefton, will reimburse the Consultancy Company, i.e., C&J, for payment of all necessary documented business expenses. [*Id.* at § 6].

With respect to the Ellerton Loan, Mr. Ellerton testified that he personally loaned the money to Sefton in September 2013, after the Board had "ousted [him] as the CEO and as a director," but before they had canceled the Consultancy Agreement. [#93-7 at 131:13-132:22]. When asked about the presence of a formal document memorializing the Ellerton Loan, he

testified that "[i]t's on the financials,[10] and I believe I have a canceled check and/or a second thing showing it was on my personal account," but he could not reference a document formalizing the terms of the Ellerton Loan.  [*Id.* at 133:5-14].  He stated that he understood the money to be a loan because he articulated as much when he wrote the check to Sefton, the canceled check is in his name rather than from C&J, and Sefton recorded the money as a loan.  [*Id.* at 134:3-18, 135:8-10].  Mr. Ellerton testified as to terms of repayment that "[b]asically it was just assumed that while I was still involved, we would sort that out," and "[a]s it turns out when they canceled the agreement, then it became due and payable."  [*Id.* at 135:14-20].  When asked how he knew the loan had become due and payable, he responded "[t]hat's what the agreement says. Any moneys owed becomes due and payable within ten days…[i]n the consulting agreement between C&J and Sefton."  [*Id.* at 135:21-136:2].  Mr. Ellerton acknowledged that C&J and Sefton are the only parties to the Consultancy Agreement, [*id.* at 128:7-11], and admitted that in his individual capacity he is not a party to the Consultancy Agreement.  [*Id.* at 126:22-127:2].  It is undisputed that C&J could not assign or transfer any of the rights provided in the Consultancy Agreement and the parties to the Agreement could not modify it except in writing signed by C&J and Sefton.  [#93-5 at ¶¶ 9, 11.8].

With respect to a formal, written contract, Mr. Ellerton's testimony demonstrates that the Consultancy Agreement is the only relevant contract in existence and he was not a party to it. [#93-5 at ¶ 6; #93-7 at 126:23-127:11].  Generally, a nonparty who is not specifically referred to by the terms of an agreement cannot enforce contract provisions, or be bound by them.  *See Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008).  Mr. Ellerton is referred to as

---

[10]  Sefton refers to the "financials" cited by Mr. Ellerton as its "publicly filed financial statements."  [#93 at 13-14].

the "Initial Consultant" in the Consultancy Agreement, which also refers to "other person(s) as the Consultancy Company may propose and the Client may accept, as a Suitable Substitute, as provided in Clause 2.1 in substitution of the Initial Consultant from time to time." [#93-5 at 5, 6, § 2.1]. The contract contemplates that Mr. Ellerton, as the "Initial Consultant" could be substituted with "any Consultant with a level of skill and expertise, in the opinion of the Client, broadly similar to those of the Initial Consultant for providing the Services and that is qualified under the AIM Rules if and to the extent applicable (any such substitute, a 'Suitable Substitute')." [*Id.* at § 2.1]. There is no indication that Mr. Ellerton, as the Initial Consultant, or any Suitable Substitute, can enforce the Consultancy Agreement without C&J or the disbursement provision. Moreover, there are no loan provisions in the Consultancy Agreement. *See* [#93-5].

To the extent Mr. Ellerton claims his personal check or Sefton's publicly filed financial statements create a contract regarding the Ellerton Loan, this court respectfully disagrees. Under Colorado law a contract may be evidenced by two or more writings. *Grizzly Bar, Inc. v. Hartman*, 454 P.2d 788, 791 (Colo. 1969) (en banc). In determining whether a binding contract exists, I consider if the terms of the writings are specific enough to constitute a contract, and if the parties intended the writings to be a binding contract. *See New York Life Ins. Co.*, 80 F.3d at 410. The personal check and the financial statements are not signed by Sefton as the party to be charged, and they do not include the terms or conditions of the contract, the interest or property affected, or the consideration to be paid. *See id.* at 409 ("a contract is an agreement to do or not to do a particular thing…'[i]f essentials are unsettled, and no method of settlement is agreed upon, there is no contract.... If the writing leaves the agreement of the parties vague and

indefinite as to an essential element thereof, it is not a contract and cannot be made one by parol.'") (quoting *Greater Serv. Homebuilders' Inv. Ass'n v. Albright,* 88 Colo. 146, 293 P. 345, 348-49 (1930)).  Furthermore, Mr. Ellerton has put forward no evidence to demonstrate that Sefton intended to be bound by a contract with him as an individual regarding the Ellerton Loan, the Ellerton Expenses, or any other subject.  Mr. Ellerton testified that he *expected* Sefton would repay the Ellerton Loan "upon demand with interest thereon at the current market rate," and that he incurred the Ellerton Expenses with the expectation that Ellerton would repay such funds upon demand.  [#4 at ¶¶ 58, 59, 61].  However, his deposition testimony demonstrates that he and Sefton never settled on essential terms to govern repayment of any money loaned or expenses incurred.  *See* [#93-7 at 134:3-18, 135:8-10].  His deposition testimony also demonstrates that his expectation regarding reimbursement of the Ellerton Expenses derives from the business expenses clause in the Consultancy Agreement, to which he admits he is not a party.  [*Id.* at 135:21-136:2].

Finally, to the extent Mr. Ellerton claims an oral contract exists between him and Sefton because he articulated that the money at issue was a loan, any such contract is subject to the state's statute of frauds.  There is no indication that the purported oral contract would be performed within a year.  *See* Colo. Rev. Stat. § 38–10–112(1)(a).  Even accepting the Verified Complaint as an affidavit, there is no allegation that Mr. Ellerton expected to be repaid within a year.  Indeed, his testimony shows that he had no specific anticipation for when Sefton would repay the loan.  Rather, Mr. Ellerton thought the Consultancy Agreement governed the repayment of the loan, and the Consultancy Agreement was to be effective "October 1, 2010 until December 31, 2012, and continuing thereafter for consecutive annual calendar year

periods…until terminated by either the Client or by the Consultancy Company." [#93-5 at 6, ¶ 3.1]. The fact that he believed the Ellerton Loan became due and payable when Sefton terminated the Consultancy Agreement, which happened mere days after he wrote the personal check, does not change the analysis or demonstrate an oral contract that would be performed within a year. *See Whatley v. Crawford & Co.*, 15 F. App'x 625, 635 (10th Cir. 2001) (recognizing "the statute of frauds permits enforcement only of contracts that may be fully performed within one year," and observing that the "mere allegation that an employment contract was breached within one year does not place it beyond the reach of the statute of frauds.")). And, as mentioned above, the personal check and Sefton's financial statements are insufficient to remove any oral contract from the statute of frauds. *See Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1027 (D. Colo. 2014) (instructing that the "memorandum or note necessary to bring an oral contract outside of the Statute of Frauds must show on its face or by reference to other writings (1) the names of the parties, (2) the terms or conditions of the contract, (3) the interest or property affected, and (4) the consideration to be paid therefor," and the "writing must be in confirmation of the contract.") (quoting *Nations Enters., Inc. v. Process Equip. Co.*, 579 P.2d 655, 658 (Colo. App. 1978) (internal quotation marks omitted).

Based on the record before it, this court finds that Mr. Ellerton has not marshaled evidence of a written or an oral contract with Sefton in response to the Motion for Summary Judgment, and thus recommends entry of summary judgment in favor of Sefton on this claim.[11]

---

[11] This court also notes that Mr. Ellerton does not assert a claim for breach of an implied in fact contract or breach of contract as third-party beneficiary, and naturally Sefton does not brief either issue. Mr. Ellerton was represented by an attorney at the time he filed the Complaint and thus his pleading is not entitled to the liberal construction that the court affords his *pro se* filings. Additionally, the court will not "supply additional factual allegations to round out a plaintiff's

3.      *Unjust Enrichment/Quantum Meruit*

Finally, Mr. Ellerton claims unjust enrichment/quantum meruit to the extent a contract does not govern the debt Sefton allegedly owes to him, i.e. the Ellerton Loan, the Ellerton Expenses, and his services to Sefton.  [#4 at ¶¶ 173, 174].  Sefton argues that Mr. Ellerton cannot pursue this claim against Sefton because the debt at issue is covered by the Consultancy Agreement and, as a subcontractor who worked for C&J, his remedy lies with C&J.

"Unjust enrichment is a claim in quasi-contract based on principles of restitution." *West Ridge Group, LLC v. First Trust Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011) (citing *DCB Constr. Co. v. Central City Devp. Co.,* 965 P.2d 115, 118 (Colo. 1998) (en banc)). It is a "remedy designed to avoid benefit to one to the unfair detriment of another." *Id.* (quoting *Salzman v. Bachrach,* 996 P.2d 1263, 1265 (Colo. 2000) (en banc)). "A party claiming unjust enrichment must prove that: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Sterenbuch v. Goss,* 266 P.3d 428, 431 (Colo. App. 2011). Importantly, an unjust enrichment claim "is a remedy designed for circumstances in which other remedies are unavailable"; and thus, it is not available as a mere alternative legal theory when the subject is covered by an express contract." *West Ridge Group, LLC*, 414 F. App'x at 120 (citing *Interbank Investments, LLC v. Eagle River Water & San. Dist.*, 77 P.3d 814, 819 (Colo. App. 2003)). Whether a party is entitled to recovery on a theory of unjust enrichment requires a trial court to "engage in a highly fact-intensive inquiry," *Dudding v. Norton Frickey &*

---

complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall,* 935 F.2d at 1110).  Therefore, I decline to address either issue *sua sponte*.

*Associates,* 11 P.3d 441, 445 (Colo. 2000), and to "make extensive factual findings to determine whether a party has been unjustly enriched." *Lewis v. Lewis,* 189 P.3d 1134, 1140 (Colo. 2008). As many courts have noted, the third prong, i.e., whether enrichment of the defendant is unjust, poses the greatest challenge to trial courts. *See, e.g., id.* at 1142.

Sefton cites to the Verified Complaint and Mr. Ellerton's testimony during his deposition related to the bankruptcy proceeding to contend that Mr. Ellerton's unjust enrichment claim derives exclusively from expenditures that are covered by the Consultancy Agreement. [#93 at 17]. Indeed, Mr. Ellerton alleges that he "conferred benefits upon Defendant Sefton, including, but not limited to, the Ellerton Loan, the Ellerton Expenses," and his services. [#4 at ¶ 174]. In response, Sefton raises two arguments. Under the first, Mr. Ellerton cannot recover for unjust enrichment because the Consultancy Agreement covers the expenditures at issue; second, because he conferred a benefit on Sefton pursuant to a third party contract between C&J and Sefton, Mr. Ellerton as an individual cannot pursue recovery from Sefton. [#93 at 17].

To resolve this issue, this court examined the evolution of the common law unjust enrichment claim in Colorado courts. In *DCB Construction Co., Inc. v. Central City Development Co.*, the Colorado Court of Appeals considered a situation in which a contractor, hired by a commercial lessee to perform improvements on a building, brought an unjust enrichment action against the lessor after the lessee failed to make payments under the contract, and relied on the Restatement of Restitution to hold, "[a] person who has conferred a benefit upon another as the performance of a contract with a third party is not entitled to restitution from the other merely because of a failure of performance by the third person." 940 P.2d 958, 963 (Colo. App. 1996) (quoting Restatement of Restitution § 110 at 455). *Accord Redd Iron, Inc. v.*

*International Sales and Services Corp.*, 200 P.3d 1133, 1138 (Colo. App. 2008).   The *DCB Construction* court further held that, absent a showing that the contract with the third party is "rescindable because of fraud, mistake or duress," the fact that the third party (C&J here) fails to deliver to plaintiff, i.e. Mr. Ellerton, the consideration called for by the contract "provides no proper basis for a claim of unjust enrichment against a person [Sefton] who may have benefitted from [Mr. Ellerton's] performance of its contractual obligation."   940 P.2d at 963.   The Colorado Supreme Court affirmed the ruling, and held in relevant part that for liability for unjust enrichment to attach to the lessor, the contractor must show the lessor has "engaged in some form of improper, deceitful, or misleading conduct."   *See DCB Const. Co., Inc. v. Cen. City Dev. Co.*, 965 P.2d 115, 117, 120 (Colo. 1998) (en banc) (observing that it was "important to articulate a general rule, applicable in this context, that provides more stability and predictability than an ad hoc review.").   *Accord R.A.S. Builders, Inc. v. Euclid & Commonwealth Associates*, 965 P.2d 1242, 1244 (Colo. 1998).   Thereafter, divisions of the Colorado Court of Appeals applied "differing conclusions regarding the applicability of *DCB*'s 'improper conduct' requirement in other contexts, before the Colorado Supreme Court announced that the 'particularized analysis for the third prong of unjust enrichment' enunciated in *DCB* was limited to the landlord-tenant contractor context."   *Redd Iron, Inc.*, 200 P.3d at 1137 (quoting *Lewis*, 189 P.3d at 1143 and n.3) ("our DCB holding requiring malfeasance applies only in situations where a landlord receives a benefit from a failed contract between a tenant and a party working at the tenant's behest.").

The Colorado Court of Appeals then applied this framework in *Redd Iron, Inc. v. International Sales and Services Corp*, to determine what a subcontractor must demonstrate to

establish that a landowner or general contractor's retention of benefits is unjust for purposes of the third prong.  200 P.3d at 1138 ("While the inquiry will depend to a large extent on the facts of the specific case, *see DCB,* 965 P.2d at 120, certain generally applicable principles can be gleaned from our supreme court's cases, from the authorities on which the supreme court has relied, and from cases from other jurisdictions that have addressed the issue.").  Ultimately, the *Redd Iron* court concluded that the subcontractor must "establish some basis for finding injustice" beyond the mere showing that the owner or contractor benefitted from services provided and the subcontractor was not paid for his work.  *Id.*

This court finds the *Redd Iron* test to be instructive in this case.  I begin with the basic principle that "[a] person who has conferred a benefit upon another as the performance of a contract with a third party is not entitled to restitution from the other merely because of a failure of performance by the third person."  *DCB Construction Co., Inc.* 940 P.2d at 963 (quoting Restatement of Restitution § 110 at 455).   As *Redd Iron* observed, neither the rule articulated in Restatement of Restitution § 110 nor the illustrations that follow it, "suggest that the rule is limited to any specific context."  200 P.3d at 1138.  Next, pursuant to *Redd Iron* and the law on which that court relied, I consider whether Mr. Ellerton has carried his burden of demonstrating the existence of circumstances that would make Sefton's retention of the alleged benefits conferred unjust.  I need not conclude that *Redd Iron*'s analysis pertains precisely to the set of facts presented here, or decide the type of circumstances that would render Sefton's retention unjust, because Mr. Ellerton has provided no evidence to satisfy his burden.  *See Redd Iron*, 200 P.3d at 1139 ("[Plaintiff] was required to prove all three elements of [the unjust enrichment] claim, as well as the value of the benefit it conferred") (citation omitted).  Even assuming that

Sefton received a benefit at Mr. Ellerton's expense, Sefton's failure to pay either him or C&J for the Ellerton Loan and Ellerton expenses does not in isolation establish the third prong. *See id.* at 1140 ("[s]uch a determination requires a 'highly fact-intensive inquiry'") (citing *Dudding*, 11 P.3d at 445). *See also* Restatement (First) of Restitution § 1 (1937), comment c ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor."). Nor does the Verified Complaint allege specific facts so as to create a genuine issue of material fact with respect to the elements of unjust enrichment. *See generally* [#4]. Mr. Ellerton does not describe the expenses or provide a standard by which the court or a factfinder could determine a reasonable reimbursement for those expenses. Similarly, there is no evidence regarding the terms of the Ellerton loan or how the parties anticipated repayment of the loan. Therefore, regardless of whether the claim for unjust enrichment derives from benefits Mr. Ellerton conferred on Sefton in furtherance of his "initial consultant" position with C&J, [#93-7 at 135:14-136:6], or from benefits he simply bestowed on Sefton absent any agreement with C&J, *see* [#93-7 at 138:3-140:22], Mr. Ellerton has provided no facts to counter Sefton's Motion for Summary Judgment, and he cannot rely on his pleading to create a genuine issue of fact.

Accordingly, based on the record before it, this court respectfully recommends that Sefton's Motion for Summary Judgment be GRANTED as to each of Mr. Ellerton's three remaining affirmative claims.

### III.    Motions for Sanctions

### A.    First Motion for Sanctions

On May 12, 2016, Sefton filed the First Motion for Sanctions seeking dismissal of Mr. Ellerton's claims pursuant to Federal Rules of Civil Procedure 16(f)(1)(C), 37(b)(2)(A), 37(c)(1)(C), and 41(b), as well as D.C.COLO.LCivR 41.1, for his "numerous failures to comply with the rules and orders of this Court, including his failure to provide Initial Disclosures or otherwise advance this case."  [#75].  Sefton argues the sanction of dismissal is appropriate because Mr. Ellerton has generally failed to adhere to court-ordered deadlines and has failed to meaningfully participate in the discovery process.  For instance, Sefton asserts, Mr. Ellerton appeared at the April 26, 2016 Status Conference by telephone without first seeking leave of court; he failed to serve his Initial Disclosures and accompanying documents by the court-ordered deadline of May 3, 2016, and had not provided any documents by the time Sefton filed the Motion; Mr. Ellerton never responded to discovery requests served on him and rather propounded discovery requests in excess of the limit set forth in the Scheduling Order; he failed to appear for his noticed deposition in Colorado; he failed to serve the Individual Defendants, failed to properly respond to this court's Order to Show Cause, and failed to properly respond to Sefton's Amended Counterclaims; and he repeatedly fails to confer with Sefton's counsel prior to filing motions, and once failed to update the court with his mailing address.  [*Id.* at 2-4].  Sefton argues that these transgressions warrant, at a minimum, precluding Mr. Ellerton from presenting any witnesses or evidence that he has not timely disclosed, but contends that dismissal sanctions are more appropriate.

Sefton, for the first time in its Reply in support of the First Motion for Sanctions, appears to seek entry of default as to its counterclaims against Mr. Ellerton for discovery violations.  *See* [#88].  *See also* [#89 at 1, n.1 ("Sefton also seeks dismissal with prejudice of all claims against Sefton and entry of default on all of Sefton's Counterclaims, but these sanctions are addressed more fully in Sefton's separate Motion for Sanctions [ECF No. 75] and its Reply in Support of that Motion")].   Contrary to Sefton's assertion, it did not move for entry of default as to its counterclaims in the First Motion for Sanctions, but rather requested that discovery sanction for the first time in its Reply.   *Compare* [#88] *with* [#89].   Indeed, the proposed order that accompanies the First Motion for Sanctions specifies that "Sefton's Amended Counterclaims [ECF No. 44] remain pending."  *See* [#75-3].  As an initial matter, Mr. Ellerton never responded to the First Motion for Sanctions, and thus Sefton's Reply is essentially an improper supplemental brief to the Motion filed without leave of court.  In addition, this court will not entertain a request for entry of default, or any other request, that is raised for the first time in a reply.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").   To the extent Sefton seeks entry of default on its Amended Counterclaims as a sanction for discovery violations, as opposed to dismissal of Mr. Ellerton's affirmative claims, it must move accordingly in compliance with the Federal Rules of Civil Procedure and the Local Rules of Civil Practice for this District.  *See Minshall v. McGraw Hill Broadcasting Co., Inc.*, 323 F.3d 1273, 1288 (10th Cir. 2003)  (noting  that  an  argument  "first  raised…in  [a]  reply  brief…is waived") (citing *Coleman v. B-G Maintenance Management of Colorado, Inc.*, 108 F.3d 1199,

1205 (10th Cir. 1997) ("It is not sufficient to merely mention an issue in a reply brief. Issues not raised in the opening brief are deemed abandoned or waived.").[12]

Because the First Motion for Sanctions is directed at Mr. Ellerton's affirmative claims, and this court respectfully recommends that the court dismiss Mr. Ellerton's claims with prejudice pursuant to Sefton's Motion for Summary Judgment, I respectfully recommend that the First Motion for Sanctions be DENIED AS MOOT.

### B.      Second Motion for Sanctions

On June 10, 2016, Sefton filed the Second Motion for Sanctions seeking monetary sanctions against Plaintiffs pursuant to Rule 37(d)(1)(A)(i)-(ii), on the basis that Plaintiffs failed to respond to discovery requests and failed to appear for their individual and Rule 30(b)(6) depositions. [#89]. Sefton represents that its counsel conferred in good faith with Mr. Ellerton regarding the requested relief in an attempt to avoid court intervention, and that Mr. Ellerton "simply reiterated that Sefton is 'well aware of [his] financial situation,'" and "refused to respond to discovery." [*Id.* at 1-2]. On June 21, 2016, Mr. Ellerton filed a Response that did not

---

[12] This court makes no finding in this Recommendation as to whether entry of default is appropriate, but notes that entry of default for failure to comply with discovery is an extraordinary remedy and it does not appear that Sefton moved for a motion to compel discovery that resulted in an order from the court that warned Mr. Ellerton that failure to appropriately respond could lead to the entry of default against him.  In addition, as discussed briefly below, some of Sefton's discovery requests as written appear overbroad on their face, and therefore, not susceptible to an order compelling response to the request.  *See Bat v. A.G. Edwards & Sons, Inc.,* No. 04-CV-02225-REB-BNB, 2005 WL 6776838, at *3 (D. Colo. Nov. 18, 2005) ("Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.").  Though it may not act as Mr. Ellerton's advocate, *see Yang,* 525 F.3d at 927 n. 1, "the court also remains mindful of the admonition that its inherent power to sanction must be exercised with restraint and discretion," *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 636 (D. Colo. 2007), and any discovery sanction should be limited to what is proportionate to the offense.

expressly address the contentions raised in Sefton's Motion, other than to assert that "Sefton's Counterclaim and requests for monetary sanctions should be denied, as Sefton has for the most part ignored discovery rules…" [#91]. Sefton filed a Reply on July 7, 2016.[13]

Sefton argues that Plaintiffs failed to respond to discovery requests and failed to appear on June 6, 2016 for their depositions that were properly noticed on May 19, 2016, and attaches the propounded requests and notices of deposition to its Motion. [#89-2; #89-3]. *See also* [#89-4 through -6]. The Corporate Plaintiffs did not respond, and Mr. Ellerton does not refute Sefton's contentions in his Response. [#91]. While Mr. Ellerton's "Declaration Response Regarding Sefton Resources, Inc.'s Motion for Monetary Sanctions" is over 150 pages with attachments, Mr. Ellerton never correlates the attached documents to the propounded discovery requests and any correlation is not self-evident to this court. *See* [#91; #91-1]. Nor does it appear that Mr. Ellerton objected to the discovery requests, despite the fact that some of the requests are objectionable on their face. *See, e.g.,* [#89-2 at 10 ("Identify all criminal, civil, domestic, bankruptcy, administrative agency, or other legal matters in which you have been involved, either as a party or a witness, by providing for each such matter the approximate date that the matter was initiated, the parties to the matter, the venue of the matter, and any other identifying information, such as case or matter numbers"); #89-2 at 12 ("Identify all communications between you and Carol Ellerton from July 14, 2014, to the present. For each and every communication, identify all individuals who participated in the communication(s); the

---

[13] In the Reply, Sefton specifies that the monetary sanctions requested in the Motion "are an *alternative* to dismissal and default," which are the primary sanctions sought, and that it is entitled to reimbursement of its expenses in addition to the dismissal and default sanctions. [#92 at 1, n.1 (emphasis in original)]. For the reasons stated above, the request for dismissal sanctions is moot in light of this court's recommendation regarding the motion for summary judgment, and Sefton did not seek default sanctions in an affirmative motion.

time, date, and location for the communication(s); the topics discussed; the positions of each party to the communication(s); any representations made by you by the participating individual(s); any actions taken as a result of the alleged communication(s); and any witnesses to the alleged communication(s)")].

As to the failure to appear for deposition, Sefton noticed all depositions to be held at its counsel's office in Denver, Colorado. *See* [#89-3]. Mr. Ellerton lives in Hawaii and courts in this District expect and generally require parties to hold a deposition at a location convenient for the deponent, including parties. *See* D.C.COLO.LCivR 30.1 ("Before sending a notice to take a deposition, counsel or the unrepresented party seeking the deposition shall make a good faith effort to schedule it in a convenient and cost effective manner"); *Metrex Research Corp. v. United States*, 151 F.R.D. 122 (D. Colo. 1993). On June 6, 2016, the Clerk of the Court docketed a Declaration of Mr. Ellerton, dated May 25, 2016, representing that he was unable to travel to Colorado for the noticed depositions due to "limited financial capabilities." [#87]. In that same filing, Mr. Ellerton contends that Sefton took his deposition, and that of Carol Ellerton in the third quarter 2015. [*Id.* at 2]. The record before the court also includes copies of electronic correspondence between Mr. Ellerton and counsel for Sefton in which Mr. Ellerton writes on June 10, 2016, "You are well aware of my financial situation and yet you failed to propose alternate ways for my deposition (video conferences etc.,) as we did for Sefton's CEO last year."). [#91-1 at 79].

Although Mr. Ellerton's June 6 submission was not docketed or recognized as a motion for protective order when filed, this court construes it as such under the liberal interpretation provided for *pro se* filings. In its Reply in support of the Motion, filed after Mr. Ellerton's June

6 submission, Sefton does not address why it chose not to pursue the depositions through another mechanism, such as depositions noticed within the vicinity of Mr. Ellerton's residence in Hawaii or by video or telephone conference. Therefore, in its discretion, this court declines to sanction Mr. Ellerton for failing to appear in Denver for the depositions.

However, Mr. Ellerton's financial situation does not excuse his failure to propound Initial Disclosures or to respond to the written discovery requests, with objections if appropriate, as directed by the court on April 26, 2016 [#67]. *See United States v. Distefano*, 279 F.3d 1241, 1245 (10th Cir. 2002) (holding that litigants proceeding *pro se* must still comply with the same procedural standards as those represented by counsel). Indeed, Rule 37(d)(2) explicitly provides that "a failure described in Rule 37(d)(1)(a) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Accordingly, Sefton is entitled to its reasonable expenses, including attorney's fees, caused by Plaintiffs' failure to comply with written discovery, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). This court does not find a basis in the record for applying this exception; therefore, this court GRANTS IN PART and DENIES IN PART the Second Motion for Sanctions and AWARDS Sefton its attorney's fees and costs associated with its efforts to obtain responses to its written discovery requests from Plaintiffs. To the extent the Parties cannot reach agreement as to the amount of expenses to be awarded, Sefton shall file a properly supported Motion for Attorney's Fees and Costs on or before **January 17, 2017**.

## CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that:

1.  Mr. Ellerton's Motion to Dismiss Without Prejudice [#84] be **DENIED**;

2.   Sefton's Motion for Summary Judgment [#93] be **GRANTED**;

3.  The court **DISMISS** Mr. Ellerton's three remaining claims **WITH PREJUDICE**; and

4.  Sefton's Motion for Sanctions [#75] be **DENIED AS MOOT**.[14]

Additionally, **IT IS ORDERED**:

1.  Sefton's Motion for Monetary Sanctions Under Federal Rule of Civil Procedure 37(d)

[#89] is **GRANTED IN PART and DENIED IN PART**;

---

[14] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

2.  Sefton is directed to submit an itemization of costs and fees associated with the Motion for Monetary Sanctions Under Federal Rule of Civil Procedure 37(d), with appropriate support, on or before **January 17, 2017**;

3.  The Clerk of the Court is directed to mail Mr. Ellerton a copy of this Recommendation and Order at his address of record: **John J. Ellerton**, **2724 Puuhoolai Street, Kihei Maui, Hawaii 96753**; and

4.  Within five (5) business days of Judge Moore's disposition of this Recommendation, the Parties shall **FILE** a Joint Status Report with the court that reflects how they intend to proceed should any claims or counterclaims remain pending.

DATED: December 29, 2016                    BY THE COURT:


                                            s/ Nina Y. Wang_____
                                            United States Magistrate Judge